[Crim. No. 14469. In Bank. Aug. 24, 1970.]

In re WILLIAM M., a Minor, on Habeas Corpus.

**COUNSEL**

Milch, Wolfsheimer & Wagner and Andrew G. Wagner for Petitioner.

Kenneth Hecht, B. E. Bergesen III, Peter Bull, Michael S. Sorgen, Armando Menocal and Donald H. Maffly as Amici Curiae on behalf of Petitioner.

James Don Keller, District Attorney, Richard H. Bein and A. Bruce Ferguson, Deputy District Attorneys, for Respondent.

**OPINION**

**TOBRINER, J.**—This case raises the basic issue of whether a juvenile court may refuse to consider specific facts supporting the release of a juvenile prior to a jurisdictional hearing and, instead, establish a rule that all juveniles accused of a specified type of offense should automatically be detained. We give the reasons why we have concluded that the Juvenile Court Law protects the minor's right to an individualized detention hearing, in which the court may not dispose of cases by mechanical rules on a categorical basis.

### 1. *The facts*

On March 17, 1970, the supervising probation officer for the juvenile department of the superior court filed a petition alleging that William M., a minor, came within the provisions of section 602 of the Welfare and Institutions Code. (See Welf. & Inst. Code, § 650.) The petition specified that on January 28, 1970, the minor had violated Health and Safety Code section 11531 by selling marijuana to an officer of the police department. At 6 a.m. on March 19, 1970, an officer to whom William M. had allegedly sold marijuana took the youth into temporary custody pursuant to an arrest warrant. (Welf. & Inst. Code, § 625.)[1] The officer did not release

---

[1]References hereinafter to statutory provisions, without mention of any code, are to sections of the Welfare and Institutions Code. At oral argument the district attorney

the minor on his promise, or the assurance of his parents, that he would appear for further proceedings.[2] Instead, the 16-year-old youth was taken to the county juvenile hall and remained there until the detention hearing. (See Welf. & Inst. Code, §§ 627-632.)

At 2 p.m., Thursday, March 19, William M., his parents, his attorney, a family friend who was also an attorney, and the probation officer appeared before the juvenile court for a detention hearing. The court opened the proceedings by reading the charges and the police report. The court then said: *"It looks like it is all pre-arranged, but anybody who sells marijuana or LSD is detained here until his regular hearing, for the safety of others."* (Italics added.) The youth's attorney offered to show that the young man was a good student at a local high school, that he had never had any school disciplinary problems, and that he had never before been arrested. The attorney described the minor's salutary home life with parents who were willing to provide care and guidance and capable of doing so. The attorney offered to show that under these circumstances the youth would not present an imminent danger to himself or others. On this offer of proof the trial court refused to release the juvenile.[3] The attorney then proposed, as an "officer of this court," "to take full responsibility for this boy and let him live in my home until the hearing." When the court rejected this suggestion the youth's attorney requested a one-day continuance of the detention hearing. (Welf. & Inst. Code, § 638.) The court granted the continuance and observed, "you are just wasting your time . . . ."

---

explained that after the petition had been filed under section 602, the juvenile court considered the supporting affidavits under *People* v. *Sesslin* (1968) 68 Cal.2d 418, 421 [67 Cal.Rptr. 409, 439 P.2d 321], and determined that an arrest warrant should issue. (Welf. & Inst. Code, § 663.)

[2]Welfare and Institutions Code section 626: "An officer who takes a minor into temporary custody under the provisions of Section 625 shall thereafter proceed as follows: (a) He may release such minor; or (b) He may prepare in duplicate a written notice to appear before the probation officer of the county in which such minor was taken into custody at a time and place specified in the notice. . . . Upon the execution of the promise to appear, he shall immediately release such minor. . . . or (c) He may take such minor without unnecessary delay before the probation officer of the county. . . . *In determining which disposition of the minor he will make, the officer shall prefer the alternative which least restricts the minor's freedom of movement, provided such alternative is compatible with the best interests of the minor and the community."* (Italics added.)

[3]The juvenile court explained: "Well, it is not a hard decision; it is an unhappy decision that I make, but your boy is going to stay here, and I have got twelve year old kids in here for doing the same thing that he did, and I am going to keep every kid in this place until they have their regular hearing that I catch selling marijuana, LSD, or pills. If you sat here every day and saw some of these kids who have been using this stuff—marijuana, LSD, what-have-you—and see what happens to them, then when I figure that anybody sells this stuff to anybody for a profit, I am not going to take any chance on what they will do between now and their regular hearing."

On Friday the attorney recited to the court the standards for detention of juveniles under Welfare and Institutions Code section 635,[4] cited the relevant legislative history which prohibits detention for the sake of therapeutic effect,[5] presented the only relevant California appellate court opinion on the detention question,[6] and marshalled the facts which in this case favored the young man's release.[7] Finally, the attorney expressed concern for the deleterious effect that detention might have on the youth and his education.

The court refused this offer of proof and did not permit William M. or his parents to testify. Although the court declared that it tried to avoid holding juveniles in custody, it further stated that it detained, pending a jurisdictional hearing, as a matter of "philosophy" or "policy," every child who was charged with the offense involved in the present case.[8] The court observed: "The Legislature must have thought it [the offense] was serious, it

[4] Welfare and Institutions Code section 635: "The court will examine such minor, his parent, guardian, or other person having relevant knowledge, hear such relevant evidence as the minor, his parent or guardian or their counsel desires to present, and, *unless it appears* that such minor has violated an order of the juvenile court or has escaped from the commitment of the juvenile court or *that it is a matter of immediate and urgent necessity for the protection of such minor or the person or property of another that he be detained or that such minor is likely to flee the jurisdiction of the court, the court shall make its order releasing such minor* from custody." (Italics added.)

[5] Report of the Governor's Special Study Commission on Juvenile Justice, Part I—Recommendations for Changes in California's Juvenile Court Law (1960): "While detention may have a therapeutic effect in select cases, in the Commission's view, it is neither the function of law enforcement agencies nor probation departments to use it for this purpose. In our opinion, this is clearly and unmistakably a judicial responsibility which must be arrived at after juvenile court jurisdiction has been established." (P. 42.) (See fn. 16, *infra*.)

[6] *In re Macidon* (1966) 240 Cal.App.2d 600 [49 Cal.Rptr. 861].

[7] The attorney read letters from the principal and class counselor of the boy's school, which described the boy as "courteous," "well mannered," "quiet," "concerned with his studies," "liked and accepted by his peer group," and willing to follow school rules and regulations. The attorney brought to the courtroom nine members of the community who knew the boy and who all would testify that "regardless of what this boy may be accused of having done, he is a boy who will abide by the wishes of this court. He will not be a danger to himself, to others, or to property; that the family and home situation is such that he will be supervised and he will be controlled."

[8] "THE COURT: However, when you see fifteen children killed a year ago [in this county] because of this substance abuse thing, and two have already been killed this year, I have made it a policy that anybody who sells or furnishes marijuana, sells LSD—you name it—to anyone and gets paid for it, then they are going to be detained until the next hearing. And whatever you want to call it, I will say it is because of the immediate and urgent necessity, for the protection of any person or the property of another, and that is my philosophy, and that is my basis for detaining this young man.

"  . . . . . . . . . . . . . . .

"THE COURT: And there are about twenty-five others, so he is not alone. There are about twenty-five others in here, as I told you yesterday, from the age of, I think, thirteen or twelve year old girls, up to eighteen."

is five years to life if he were an adult." The attorney answered, "If he were an adult, he would be out on bail at this very moment." The court offered: "If you want to have him handled as an adult, I will certify him to adult court and you can bail him out. . . . But, as I have already told you, your client is going to be detained, and there is not a thing you can do about it. You can go up and try to get a writ or something, test it, and that is your problem." The jurisdictional hearing[9] was set for April 7, 1970.[10]

William M. remained in juvenile hall over the weekend. On Monday the youth's father filed a petition for a writ of habeas corpus with the Court of Appeal.. (Pen. Code, § 1473.) On the same day that court denied the petition without opinion. The father then filed a petition for hearing here; on March 26, 1970, we granted the petition, transferring the matter to this court. We issued an order "to show cause before this court when the matter is ordered on calendar why the relief prayed for should not be granted." Pending determination of the petition, we directed that the young man be released from custody until the jurisdictional hearing in the juvenile court.[11] The youth was released to the custody of his parents on the same day, having spent a total of seven days in juvenile hall.

On April 6, 1970, the district attorney, respondent in proceedings before this court, filed a petition for an order staying further proceedings in the juvenile court against William M. We unanimously denied that petition in order to avoid the hardship that would be inflicted upon the boy by the protraction of proceedings pending against him.[12] On April 7, 1970, the juvenile court found true the allegations of the petition filed March 17, 1970,

---

[9] The California Juvenile Court Law provides for a jurisdictional hearing at which the juvenile court determines whether the facts of the case will support its jurisdiction to declare the minor to be a ward of the court. (Welf. & Inst. Code, § § 701, 702, 706; In re Gladys R. (1970) 1 Cal.3d 855, 859 [83 Cal.Rptr. 671, 464 P.2d 127].)

[10] Welfare and Institutions Code section 636: "If it appears upon the hearing that such minor has violated an order of the juvenile court or has escaped from a commitment of the juvenile court or that it is a matter of immediate and urgent necessity for the protection of such minor or the person or property of another that he be detained or that such minor is likely to flee the jurisdiction of the court, the court may make its order that such minor be detained in the juvenile hall or other suitable place designated by the juvenile court for a period not to exceed 15 judicial days and shall enter said order together with its findings of fact in support thereof in the records. of the court."

[11] See In re Newbern (1960) 53 Cal.2d 786, 788 [3 Cal.Rptr. 364, 350 P.2d 116] (release on own recognizance).

[12] We recognize the propriety of the alternative procedure of releasing the youth and staying the juvenile court proceedings as occurred in In re Macidon; supra, 240 Cal.App.2d 600, 601, 612. In that case only 36 days elapsed from the filing of the habeas corpus petition to the Court of Appeal's decision.

under Welfare and Institutions Code section 602,[13] declared the juvenile a ward of the court, and placed him in the home of his parents under probation conditions and the supervision of the probation officer. (Welf. & Inst. Code, §§ 725, 726.) The young man is now living at home with his parents and no further problem of delinquency has arisen.

2. *Since this case raises issues of grave public concern this court should resolve them rather than declare the case moot on its somewhat unusual factual background.*

At the outset we are confronted with the district attorney's assertion that because the jurisdictional hearing has already occurred "the matter concerning the Writ of Habeas Corpus is now rendered moot." When this court issued its order directing that the youth be released from detention pending the jurisdictional hearing in juvenile court, we granted, as a practical matter, the habeas corpus relief which petitioner sought. ▮ But if a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot.

"Such questions [of general public concern] do not become moot by reason of the fact that the ensuing judgment may no longer be binding upon a party to the action." (*County of Madera* v. *Gendron* (1963) 59 Cal.2d 798, 804 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555].)[14] In similar fashion we adjudicated the case of an arrestee's right to contact a bondsman in *In re Newbern* (1961) 55 Cal.2d 500, 505 [11 Cal.Rptr. 547, 360 P.2d 43], although he had pleaded guilty and had been sentenced during

---

[13]At the jurisdictional hearing, the juvenile admitted the allegations of the affidavit of the complaining officer. That affidavit described the offense with which petitioner is charged: the sale of one "can" of marijuana to the affiant police officer for $10 and another one-half "can" to a second officer for $5. The sale allegedly took place in petitioner's bedroom, to which another juvenile, who was also present at the sale, had directed the officers. The second juvenile introduced the two officers, and a third "special" officer to petitioner, and all went to petitioner's room where petitioner produced a brown paper bag from his desk drawer. The two packets of marijuana were taken from this bag, passed to the other juvenile and the officers, and finally sold to the officers.

[14]We should, of course, avoid advisory opinions on abstract propositions of law. (Cf. *Golden* v. *Zwickler* (1969) 394 U.S. 103, 108-109 [22 L.Ed.2d 113, 117-118, 89 S.Ct. 956]; *People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].) But we should not avoid the resolution of important and well litigated controversies arising from situations which are "capable of repetition, yet evading review." (*Moore* v. *Ogilvie* (1969) 394 U.S. 814, 816 [23 L.Ed.2d 1, 4, 89 S.Ct. 1493]; see *Hall* v. *Beals* (1969) 396 U.S. 45, 50-51 [24 L.Ed.2d 214, 219-220, 90 S.Ct. 200] (dissenting opns. of Brennan and Marshall, JJ.); Note, *Mootness on Appeal in the Supreme Court* (1970) 83 Harv.L.Rev. 1672, 1693-1694.]

the pendency of the petition. In *People* v. *Succop* (1967) 67 Cal.2d 785, 789-790 [63 Cal.Rptr. 569, 433 P.2d 473], we considered the propriety of a mentally disordered sex offender commitment although appellant had been released from confinement under that order. Witkin has noted the court's declaratory use of habeas corpus in a number of cases. (Witkin, Cal. Criminal Procedure (1963) §§ 789-790, at pp. 762-764; see, e.g., *In re Gonsalves* (1957) 48 Cal.2d 638, 639 [311 P.2d 483] ("habeas corpus is an appropriate proceeding to enable petitioner to obtain a declaration" of his rights).)

As a further example, in *In re Fluery* (1967) 67 Cal.2d 600 [63 Cal.Rptr. 298, 432 P.2d 986], we rendered judgment in a case in which the Adult Authority did not credit defendant with time served in jail after revocation of his parole and under a misdemeanor sentence. He petitioned for habeas corpus and we issued an order to show cause. The warden filed a return indicating that defendant had received proper credit for time served and thus had obtained the relief for which he had applied. In an ordinary case we would have discharged the order to show cause on the ground that it had served its purpose, but we proceeded to consider the normally moot issue: "[W]e deem it appropriate in our supervision of the administration of criminal justice to decide the questions he presented. Petitions for habeas corpus filed by other prisoners indicate that sentences are still being computed contrary to the holdings of *Patton* and *Aguilera,* and the question expressly undecided by *Aguilera* is a recurring problem important to other prisoners and the Adult Authority." (67 Cal.2d at p. 601; see Witkin, Cal. Criminal Procedure (1967 Supp.) § 790, at p. 247; *In re Harrell* (1970) 2 Cal.3d 675, 682, 706 [87 Cal.Rptr. 504, 470 P.2d 640]; *In re Swearingen* (1966) 64 Cal.2d 519, 522 [50 Cal.Rptr. 787, 413 P.2d 675]; cf. *People* v. *Chasco* (1969) 276 Cal.App.2d 271, 277-278 [80 Cal.Rptr. 667].)

The United States Supreme Court has recently suggested the importance of determining important issues which would not otherwise be decided because of the brevity of the sentence under review. "Many deep and abiding constitutional problems are encountered primarily at a level of 'low visibility' in the criminal process—in the context of prosecutions for 'minor' offenses which carry only short sentences. We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level should be left utterly remediless and defenseless against repetitions of unconstitutional conduct." (*Sibron* v. *New York* (1968) 392 U.S. 40, 52-53 [20 L.Ed.2d 917, 928-929, 88 S.Ct. 1889].) (Fn. omitted.)

The detention proceedings challenged in the present case occurred at a level of "low visibility" in a short period of time, and involved asserted

errors which are not ordinarily reviewable on appeal. (See *In re R. L.* (1970) *3 Cal.App.3d 707, 712 [83 Cal.Rptr. 81]; *In re Castro* (1966) 243 Cal. App.2d 402, 412 [52 Cal.Rptr. 469.) This case reached its present posture because we refused to stay the jurisdictional hearing in the juvenile court pending our consideration of the petition for habeas corpus.[15] We denied that stay in order to protect the juvenile, because even a few weeks delay in the court proceedings would have hindered his proper care and guidance. (See Welf. & Inst. Code, §§ 657, 800.) We doubt that this court will soon be presented with another opportunity to resolve the important questions raised here as to prehearing detention. In the hope that we may provide much-needed guidance for "the orderly administration of justice . . ." (*Di-Giorgio Fruit Corp.* v. *Department of Employment* (1961) 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487]), we explain the grounds which we believe sustain the release of the youth.

3. *The juvenile court failed to consider the youth's case on its individual merits, and held him in custody under the court's policy that all those who had allegedly sold marijuana should be detained prior to the jurisdictional hearing.*

The architects of the Juvenile Court Law clearly sought to remove California's lamentable practices as to excessive detention. (See Witkin, Summary of Cal. Law (1969 Supp.) Parent and Child, §§ 171A-172A, at pp. 1394-1399.)[16] Welfare and Institutions Code section 502 declared

---

*Reporter's Note: Vacated by Supreme Court and appeal reinstated. Decided January 13, 1971, certified for nonpublication.

[15]This case did not become moot because, as in *Jacuzzi* v. *Jacuzzi Bros., Inc.* (1966) 243 Cal.App.2d 1, 37 [52 Cal.Rptr. 147] (hg. den.), a change occurred which significantly altered the considerations involved in the decision or because, as in *In re Kay* (1970) 1 Cal.3d 930, 934, fn. 1 [83 Cal.Rptr. 686, 464 P.2d 142], a death intervened.

[16]Report of the Governor's Special Study Commission on Juvenile Justice, Part I— Recommendations for Changes in California's Juvenile Court Law (1960): "California has been severely criticized by national probation and child welfare organizations for excessive juvenile detention practices. The Commission's study, unfortunately, substantiates the validity of this criticism. . . . [In 1958] almost three-fourths of the delinquent juveniles referred to probation departments by law enforcement agencies were detained in juvenile halls. In some communities, the ratio was even higher— virtually every juvenile referred by law enforcement officers to the probation department was detained, notwithstanding the fact that some minors were apprehended in error, many committed inconsequential offenses, and many others had responsible parents able to control the minor pending the juvenile court appearance.

"The Commission is aware that some of the minors placed in detention facilities were already court wards. The Commission is also aware that a small proportion of those detained could not be immediately released either because a parent temporarily was not at home or for some equally appropriate reason. However, these unusual circumstances do not apply to the greater majority of detained juveniles.

"Unnecessary detention is both costly and unwarranted. To reduce the large volume

the purpose of the law to be "to secure for each minor under the jurisdiction of the juvenile court such *care and guidance, preferably in his own home,* as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the State; *to preserve and strengthen the minor's family ties* whenever possible, removing him from the custody of his parents only when his welfare or safety and protection of the public cannot be adequately safeguarded without removal . . . ." (Italics added.) To this end, the Legislature stated in section 635 (set forth in fn. 4, *supra*) that after the detention hearing "the court *shall make its order releasing* such *minor from custody,*" "*unless* it appears . . . that it is a matter of *immediate and urgent necessity* for the protection of such minor or the person or property of another that he be detained or that such minor is likely to flee the jurisdiction of the court . . . ." (Italics added.) ■ By requiring that the minor be released unless the case fell within one of the specified categories, the Legislature indicated its intention that detention be the exception, not the rule.[17]

■ If a child is not released by the arresting officer (Welf. & Inst. Code, § 626) or the probation officer (Welf. & Inst. Code, § 628), the probation officer must immediately file a petition under Welfare and Institutions Code section 630 and a detention hearing must be held within

---

of juvenile detention in California, the Commission recommends a more conscientious, discriminating exercise of the detention screening decision by probation departments and early detention hearings. Otherwise, California's undistinguished reputation for excessive detention practices will persist." (Pp. 41-42.) As to California's more recent experience, see Bay Area Social Planning Council, The San Francisco Juvenile Court, Background Information (1968) pp. 261-263.)

[17]The California Juvenile Court Law, as properly administered, provides an adequate system for the prehearing release of juveniles without the requirement of posting bail. (See *Fulwood* v. *Stone* (1967) 394 F.2d 939, 943 [129 App.D.C. 314]; *Baldwin* v. *Lewis* (E.D.Wis. 1969) 300 F.Supp. 1220, 1233.) Hence, we decline to consider whether juveniles are constitutionally entitled to bail. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 6; see *Trimble* v. *Stone* (D.D.C. 1960) 187 F.Supp. 483, 488 (right to bail); *In re Magnuson* (1952) 110 Cal.App.2d 73, 74 [242 P.2d 362] (no right to bail on appeal); see Freed & Wald, Bail in the United States: 1964 (1964) p. 94, fn. 6.) In *Gault* the United States Supreme Court declared that "whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." But the court observed: "we are not here concerned with the procedures or constitutional rights applicable to the prejudicial stages of the juvenile process . . ." and did not consider whether a child is entitled to bail. (*In re Gault* (1967) 387 U.S. 1, 13-14 [18 L.Ed.2d 529, 538-539, 87 S.Ct. 1428].) The Juvenile Court Law and section 635, as properly construed, do not permit the detention of juveniles for the protection of society in situations in which an adult would be entitled to bail pending trial. Section 635, however, does provide ample authority for the detention of children for their own protection (see Paulsen, *Fairness to the Juvenile Offender* (1957) 41 Minn.L.Rev. 547, 552); to superimpose a provision for bail in the Juvenile Court Law would cause unexplored difficulties for most juveniles, particularly those who are indigent. (See Foote, *The Coming Constitutional Crisis in Bail: II* (1965) 113 U.Pa.L.Rev. 1125, 1151-1164.)

one judicial day. (Welf. & Inst. Code, § 632; see Bay Area Social Planning Council, The San Francisco Juvenile Court, *supra,* pp. 809-829; National Conference on Bail and Criminal Justice Proceedings (May 27-28, 1964) pp. 259-292; U.S. Dept. of Health, Educ. & Welf., Children's Bureau, Standards for Juvenile and Family Courts (1966) pp. 61-62, 71-73.) Welfare and Institutions Code section 635 provides that at the detention hearing "[t]he court will examine such minor, his parent, guardian, or other person having relevant knowledge, hear such relevant evidence as the minor, his parent or guardian or their counsel desires to present, . . ." If the court finds that detention is necessary, it may order him detained. (Welf. & Inst. Code, § 636.)

The procedure of the juvenile court in the instant case and its failure to release the minor resemble the situation in *In re Macidon* (1966) 240 Cal.App.2d 600 [49 Cal.Rptr. 861].[18] There the juvenile court had notified the probation officer that a detention hearing was to be held in every case in which the juvenile was charged with the commission of a felonious act, whether or not the juvenile had theretofore been released by the police or a probation officer. The Macidon child had allegedly stolen a purse from a 12-year-old girl on December 17, 1965. Although the officers took the youth into temporary custody they immediately released him to his mother's custody upon her written assurance that he would appear in court. (Welf. & Inst. Code, § 626.)

The probation officer filed a request for young Macidon's detention which did not allege any factual basis to support it, aside from the alleged commission of the offense. At the detention hearing the court asked the minor only his name, age, and school. Merely ascertaining the presence of the boy's mother, the court did not ask any questions of her or of the minor or of the probation officer. Apparently predicating its ruling on the material contained in the police report and a statement of the probation officer for two of the five youths charged with the offense, the court failed to follow the mandate of section 635. On this record the Court of Appeal released the boy because: first, the juvenile court had failed properly to conduct the detention hearing required by section 635; second, the facts as set forth in the reports presented at the detention hearing failed to provide any basis for detaining the minor; third, the court failed to make the findings of fact required by section 636.[19]

---

[18]The *Macidon* decision constitutes the first reported case directly considering prehearing detention under the Juvenile Court Law. Except insofar as otherwise noted, we adopt the views expressed by the Court of Appeal in *Macidon.* (See also *In re Colar* (1970) 9 Cal.App.3d 613 [88 Cal.Rptr. 651].)

[19]In its order detaining the youth the juvenile court in the instant case failed to state the specific ground upon which it relied: "WHEREAS, a hearing having been

Since the date of rendition of the *Macidon* decision the Legislature has amended Welfare and Institutions Code section 630 to read in pertinent part: "In [the detention] hearing the minor has a privilege against self-incrimination and has a right to confrontation by, and cross-examination of, any person examined by the court as provided in Section 635." ■ By granting the youth the right to remain silent and the right of confrontation in sections 630 and 635, the Legislature has now clearly indicated that the probation officer, at the detention hearing, is charged with the duty of adducing facts which will support detention under section 636.[20] ■ The probation officer must present a prima facie case that the minor committed the alleged offense; otherwise the court will lack the "immediate and urgent necessity" for detention of a youth charged under section 602. (Welf. & Inst. Code, § 635; *In re Macidon, supra,* 240 Cal.App.2d 600, 609-610; California Juvenile Court Practice (Cont. Ed. Bar 1968) § 41, p. 53.) In addition, the probation officer must state facts upon which he

held this date, and the Court having considered the facts presented finds it is necessary for the protection of person or property of others that said minor be detained, pursuant to Section 635 of the Welfare and Institutions Code. . . ." Welfare and Institutions Code section 636 contains alternative grounds for detention. Hence, the juvenile court must at least specify the ground which the facts support. (See *In re Macidon, supra,* 240 Cal.App.2d 600, 611.) In the absence of such findings the reviewing court may well be faced with great difficulty in determining the factual basis for detention. (Boches, *Juvenile Justice in California: A Re-evaluation* (1967) 19 Hastings L.J. 47, 82.) In the instant case the juvenile court, during the process of the detention hearing, did, however, set forth with repeated emphasis the basis for detention. The judge clearly indicated that, regardless of the facts of the individual case, all juveniles charged with the same offense as William M. would be detained pending the jurisdictional hearing. The conclusory findings are clarified by the judge's forthright comments which were recorded in the transcript of the proceeding submitted to this court. Hence, under these circumstances, we cannot conclude that the failure to state specific findings under Welfare and Institutions Code section 636 furnishes grounds for release of the youth.

[20]"The detention hearing under California practice has tended to be pro forma. It frequently consisted of nothing more than a brief report by the probation officer and a cursory review of the police report. One salient change brought about by the 1967 amendments is the addition to section 630, which reads in part: 'In . . . [the detention] hearing the minor . . . has a right to confrontation by, and cross-examination of, witnesses.' This means that in a delinquency hearing the probation officer will be required to present a prima facie case that the minor committed the offense, since the 'immediate and urgent necessity' for detention is necessarily premised upon this assumption. This requirement for full evidentiary hearing, coupled with provision for appointment of counsel, should, in and of itself, do more than anything else to remedy California's over-detention practices." (Fns. omitted.) (Boches, *Juvenile Justice in California: A Re-evaluation, supra,* 19 Hastings L. J. 47, 79.) Section 635 provides that all juveniles shall be released unless the case falls into one of the specified categories, and section 630 grants the right to remain silent during the detention hearing. Hence, the probation officer must assume the burden of showing that the child should be detained. (See *In re Winship* (1970) 397 U.S. 358, 364, 368 [25 L.Ed.2d 368, 375, 377, 90 S.Ct. 1068].)

based his decision not to release the minor prior to the detention hearing (Welf. & Inst. Code, § 628).[21]

■ In the instant case the juvenile court failed to conduct the detention hearing in the manner prescribed by the *Macidon* decision and the subsequently amended Juvenile Court Law. The court did not even hear any testimony by the probation officer; it did not consider his report under Welfare and Institutions Code section 628. Failing to follow the requirements of section 635 the court did not examine the young man, his parents, or his character witnesses. The court merely asked the minor whether he understood the charges; the boy responded, "Yes, sir." Neither the court nor the probation officer asked any questions of the parents. On the other hand, the youth's attorney presented an extensive offer of relevant testimony and evidence which the court refused to admit or consider.

■ We recognize that the Legislature intended to create an atmosphere of compassionate informality in juvenile court proceedings (see Welf. & Inst. Code, § 680);[22] we note, however, that in this case the juvenile law's concern with the best interest of the minor was irretrievably lost in the very beginning of the hearing when the court adopted a steadfast posture that any young person charged with the alleged offense would, regardless of the facts of the case, be detained. As a consequence, the court permitted the youth's counsel to present a lengthy offer of proof in which the attorney attempted to show that the youth should not be detained.[23]

---

[21]In the present case the juvenile court read and considered the police report. The youth denied the charges, but his attorney did not challenge the facts set forth in the police officer's declaration insofar as they established a prima facie case that the youth committed the charged offense. The court on two occasions offered to order the police officers to testify; the attorney for the juvenile neither accepted the offer nor asserted his right to confrontation and cross-examination. Under these circumstances the court properly considered the police officer's affidavit in finding a prima facie case that the youth had committed the charged offense.

[22]As we observed in *In re Dennis M.* (1969) 70 Cal.2d 444, 456 [75 Cal.Rptr. 1, 450 P.2d 296], "[E]ven after *Gault*, as we have seen, juvenile proceedings retain a *sui generis* character: although certain basic rules of due process must be observed, the proceedings are nevertheless conducted for the protection and benefit of the youth in question." (See *In re Winship, supra,* 397 U.S. 358, 366-367 [25 L.Ed.2d 368, 376-377]; see also 397 U.S. at pp. 368, 375 [25 L.Ed.2d at pp. 378, 381] (conc. opn. of Harlan, J.); 397 U.S. at p. 376 [25 L.Ed.2d at p. 382] (diss. opn. of Burger, C. J.).)

[23]The juvenile court, of course, may not assume guilt if the minor denies responsibility for the alleged offense. (*In re Macidon, supra,* 240 Cal.App.2d 600, 610; California Juvenile Court Practice (Cont.Ed.Bar 1968) § 49, at p. 60; see *In re Winship, supra,* 397 U.S. 358, 364, 367 [25 L.Ed.2d 368, 375, 377].) Nor may the juvenile court condition the juvenile's release upon his waiver of his privilege against self-incrimination. (Welf. & Inst. Code, § 630; *In re Gault, supra,* 387 U.S. 1, 42-57 [18 L.Ed.2d 529, 554-563]; cf. Judicial Council, Proceedings of the 1968 Institute for Juvenile Court Judges and Referees (1968) pp. 143-145.)

■ The nature of the charged offense cannot in itself constitute the basis for detention. (*In re Macidon, supra,* 240 Cal.App.2d 600, 608; see *Bruce M.* v. *Superior Court* (1969) 270 Cal.App.2d 566, 571-572 [75 Cal.Rptr. 881]; *Richerson* v. *Superior Court* (1968) 264 Cal.App.2d 729, 731, 734-735 [70 Cal.Rptr. 350].)[24] ■ The requirement for factual hearings prescribed by sections 630 and 635 would be pointless if the juvenile court could refuse to hear any facts at all in named categories of cases. Clearly, the Legislature intended that the court should exercise its discretion on the facts of the individual case, rather than enclose certain cases in tombs of silence. (See *In re Winship, supra,* 397 U.S. 358, 366 [25 L.Ed.2d 368, 376]; *In re Dennis M., supra,* 70 Cal.2d 444, 455-456.)

In the present case the court's concern as to releasing any minor charged with the sale of marijuana centered in his fear that "these kids" would "be out, laughing at their parents and commercially selling narcotics between now and their regular hearing." The court refused to hear any evidence to show that the juvenile would not repeat his alleged offense during the short period between the detention and the jurisdictional hearings. The court refused to consider the fact that the young man had been living at home with his parents for nearly seven weeks between the time his offense came to the attention of the police and the filing of the petition for wardship. (See *In re Macidon, supra,* 240 Cal.App.2d 600, 608.)

Moreover, neither the probation officer nor anyone else offered a scintilla of evidence that the youth—a first offender—had been involved in any large purchase, possession, or sale of the forbidden commodity. The court ignored the fact that, once the parents were alerted to their son's conduct, they clearly demonstrated their willingness and ability to provide care and guidance for him. The court refused to consider the abundant testimony of the school officials and the other nine adults who could attest to the young man's good character and the family's cohesion and concern.

■ The decision to take a minor away from his home, his parents,

---

[24]"Although it is difficult to delineate what does justify detention of a minor, it is relatively easy to set forth a number of factors that do not constitute 'immediate and urgent necessity' and are not relevant to detention. (1) Public outcry against the offense allegedly committed by the minor; (2) The need to crack down generally on juveniles in the area; (3) The nature of the offense per se; (4) The belief that detention would have a salutary effect on the minor (the juvenile court does not have the right to exercise its jurisdiction over a minor for this purpose, if at all, until an adjudication of wardship or dependency has been made); (5) Convenience of the police. the probation officer, or the district attorney for investigation purposes; (6) Concern that the minor will fabricate a defense to his case; (7) Inability of the minor to show good cause why he should be released." (California Juvenile Court Practice (Cont.Ed.Bar 1968) § 41, at p. 52.)

and his friends in fraught with such grave consequences[25] that the juvenile court cannot establish mechanical "policies" for automatic detention. The Legislature has indicated that children should be released except under certain specific conditions of "immediate and urgent necessity." We share the juvenile court's concern with the serious problem of drug abuse among juveniles, but concern cannot justify the elimination of elementary requirements of individualized justice and due process.

The basic predicate of the Juvenile Court Law is that each juvenile be treated as an individual. The whole concept of our procedure is that special diagnosis and treatment be accorded the psychological and emotional problems of each offender so that he achieves a satisfactory adjustment. Nothing could be further from the spirit of the law than the absorption of the individual into a stereotype. A mechanized, mass treatment of offenders not only violates our deep conviction that each individual should personally obtain the protection of due process of law but also thwarts the legislative objective of providing the troubled youth of today with particularized treatment directed toward rehabilitation.

The order to show cause, having served its purpose, is discharged, and the writ of habeas corpus is denied.

Wright, C. J., McComb, J., Peters, J., Mosk, J., and Sullivan, J., concurred.

---

[25]An amicus describes some of the consequences which flow from the excessive use of pre-adjudicative detention: "Locking up children charged with or suspected of offenses, before adjudication, probably does more to contribute to the army of habitual criminals than any other procedure in what is called the juvenile justice system. It is difficult for an adult who has not been through the experience to realize the terror that engulfs a youngster the first time he loses his liberty and has to spend the night or several days or weeks in a cold, impersonal cell or room away from home or family. . . . the speed with which relatively innocent youngsters succumb to the infectious miasma of 'Juvy' and its practices, attitudes, and language . . . is not surprising. The experience tells the youngster that he is 'no good' and that society has rejected him. So he responds to society's expectation, sees himself as a delinquent, and acts like one. In its 1967 report, *The Challenge of Crime in a Free Society*, page 80, the President's Commission on Law Enforcement and Administration of Justice defined this psychological response: 'Official action may actually help to fix and perpetuate delinquency in the child through a process in which the individual begins to think of himself as delinquent and organizes his behavior accordingly. That process itself is further reinforced by the effect of the labelling upon the child's family, neighbors, teachers, and peers, whose reactions communicate to the child in subtle ways a kind of expectation of delinquent conduct. The undesirable consequences of official treatment are maximized in programs that rely on institutionalizing the child.' "