[No. C036360. Third Dist. Aug. 27, 2001.]

In re CHRISTINA A., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
CHRISTINA S., Defendant and Respondent;
CHRISTINA A., Appellant.

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Appellant.

Robert A. Ryan, Jr., County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

**OPINION**

**SCOTLAND, P. J.**—Christina A. (the minor) appeals from a juvenile court order adjudging her a dependent child and setting a status review hearing. (Welf. & Inst. Code, §§ 300, 358; further section references are to this code unless otherwise specified.)

Her claim of error involves the timing of the six-month review hearing after a dependent child under the age of three has been removed from parental custody and reunification services have been ordered. (§§ 361.5, subd. (a), 366.21, subd. (e).) Unfortunately, the applicable statutory language appears to lack consistency as a result of amendments made in 1998.[1]

Section 366.21, subdivision (e) refers to the six-month review hearing being "*held* six months *after the initial dispositional hearing . . . .*" (Italics added; see also § 366, subd. (a)(1) ["The status of every dependent child in foster care shall be reviewed . . . no less frequently than once every six months, *as calculated from the date of the original dispositional hearing . . . .*" (italics added)].)

But in section 361.5, subdivision (a)(2), the Legislature has provided that, for a child who was under the age of three when the child was initially

---

[1]Because there is no significant difference between the statutes as they now read and the statutes as they were when the juvenile court issued the order challenged in this appeal, we shall apply the statutes as they currently exist.

removed from the physical custody of his or her parent, "court-ordered services shall not exceed a period of six months from the date the child entered foster care," i.e., from the "earlier of the date of the *jurisdictional hearing* . . . or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent . . . ." (§ 361.5, subd. (a), italics added.)

Although section 361.5, subdivision (a)(2) speaks to the duration of services, it suggests a review hearing should be held no later than the date on which services must end, i.e., *six months after the jurisdictional hearing*, or earlier if the jurisdictional hearing was held over 60 days after the child initially was removed from parental custody. Otherwise, there would be needless delay between the end of services and the juvenile court's review of the effectiveness of those services in order to determine whether the child should be returned to parental custody.

Construing these statutes in light of the purpose of the amendments enacted in 1998—which was to minimize delay in juvenile dependency proceedings and reduce the time that dependent children stay in temporary placement—and in view of section 366, subdivision (a)(1)—which contemplates that a review hearing may occur *prior* to six months from the date of the initial dispositional hearing—we agree with the minor that the review hearing in her case should have been scheduled no later than six months from the date of the jurisdictional hearing rather than six months from the date of the dispositional hearing.

Nevertheless, because the date of the review hearing has come and gone while this appeal was pending, we cannot provide any meaningful relief. Accordingly, we shall affirm the juvenile court's order.

### FACTS AND PROCEDURAL BACKGROUND

After the two-year-old minor was removed from parental custody on February 22, 2000, based on allegations of physical abuse and neglect by her mother, the Sacramento County Department of Health and Human Services (DHHS) filed a petition alleging that the minor came within the provisions of section 300.

A detention hearing occurred on February 28, 2000, at which the juvenile court ordered DHHS to place the minor in temporary foster care.

At the jurisdictional hearing on March 21, 2000, the court found that the minor had suffered serious physical harm due to unreasonable acts or

omissions by her mother and the mother's psychiatric problems and substance abuse. (§ 300, subds. (a), (b).) Suspecting that the mother might have a mental disability which rendered her incapable of utilizing services (§ 361.5, subd. (b)(2)), the court continued the disposition hearing to allow DHHS to obtain two psychological evaluations of the mother.

When the mother failed to submit to two evaluations, the court proceeded with the dispositional hearing on July 12, 2000, adjudicated the minor a dependent child, found that it would be detrimental to the minor to return her to parental custody, and ordered DHHS to provide reunification services to the minor's mother.

Over objection by the minor's counsel, the court scheduled the six-month review hearing (§ 366.21, subd. (e)) for January 10, 2001. Citing section 361.5, subdivision (a)(2), the minor's counsel argued the review hearing should have been set within six months of the jurisdictional hearing, i.e., in September 2000.

DISCUSSION

I

We begin by deciding whether this appeal should be dismissed as moot. The date set for the review hearing passed soon after the appellate briefing was completed; consequently, we are unable to provide the minor with the relief she seeks.

As a general rule, appellate courts decide only actual controversies. Thus, "it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581].)

An exception to this rule exists where the question to be decided is of continuing public importance and is one " ' "capable of repetition, yet evading review." ' " (*Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 6 [106 S.Ct. 2735, 2739, 92 L.Ed.2d 1]; *State of Cal. ex rel. State Lands Com. v. Superior Court* (1995) 11 Cal.4th 50, 61 [44 Cal.Rptr.2d 399, 900 P.2d 648].) Accordingly, "if a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; accord, *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1202, fn. 8 [31 Cal.Rptr.2d 776, 875 P.2d 1279].)

■ This is such a case. The appropriate timing for the review hearing at issue in this case is a question likely to recur in other cases and involves an issue of broad public interest because it affects both reunification of families and permanent plans for dependent children. As in this case, due to the expedited nature of dependency proceedings, appellate courts may be unable to obtain the appellate record and briefing by the parties in time to decide this important issue before it becomes moot in a particular case. (See, e.g., *Renee S. v. Superior Court* (1999) 76 Cal.App.4th 187, 192 [90 Cal.Rptr.2d 134]; *In re Michelle M.* (1992) 8 Cal.App.4th 326, 330 [10 Cal.Rptr.2d 64].) Therefore, we exercise our discretion to decide the issue.

## II

Prior to 1998, section 361.5, subdivision (a) stated that, when a dependent child was removed from parental custody, services to facilitate reunification should be provided to parents for a period not to exceed six months if the child was under the age of three when initially removed from parental custody, or not to exceed 12 months if the child was three years of age or older when initially removed from parental custody. The statute further provided that court-ordered services could be "extended up to a maximum time period not to exceed 18 months if it can be shown that the objectives of the service plan can be achieved within the extended time period." (Stats. 1996, ch. 1083, § 2.5; see also Stats. 1996, ch. 101, § 1; *id*, ch. 142, § 1; *id.*, ch. 1082, §§ 2, 2.7, 8; *id.*, ch. 1083, §§ 1, 2, 2.7, 10.)

Because no other time limitations appeared in the statutes for such children, the assumption and practice was that the court-ordered services described in former section 361.5 commenced from the date of the initial dispositional hearing. A review hearing was scheduled at six months from the initial dispositional hearing to assess the parent's progress toward reunification and determine whether the child should be returned to parental custody. (§ 366, subd. (a)(1) ["The status of every dependent child in foster care shall be reviewed periodically as determined by the court but no less frequently than once every six months, as calculated from the date of the original dispositional hearing . . . ."]; former § 366.21, subds. (e), (f).)

■ In 1998, the Legislature amended sections 361.5 and 366.21 relating to the provision of services and to foster care for dependent children. (Stats. 1998, ch. 75, § 1; *id.*, ch. 1054, §§ 25, 25.5, 25.6, 25.7, 33, 33.5, 33.6, 33.7; *id.*, ch. 1055, §§ 2, 2.1, 2.2, 2.3, 3, 3.1, 3.2, 3.3; *id.*, ch. 1056, §§ 12, 12.1, 12.3, 12.5, 15, 15.1, 33, 34.) The intent of the Legislature in amending those statutes was to conform California law to the changes in federal law enacted as the Adoptions and Safe Families Act (ASFA) (Pub.L. No. 105-98 (Nov.

19, 1997) 111 Stat. 2155). (Assem. Com. on Human Services, Analysis of Assem. Bill No. 2773 (1997-1998 Reg. Sess.) as amended Apr. 14, 1998; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2773 (1997-1998 Reg. Sess.) as amended Aug. 24, 1998.)

The ASFA amendment to the portion of the Social Security Act relating to child services makes safety a paramount concern in the placement and provision of services to dependent children (42 U.S.C. § 671(a)(15)); conditions federal funding for state child welfare services upon the state's adoption of a plan for foster care and adoption assistance that, among other things, includes a system by which the status of a child placed in foster care is reviewed "periodically but no less frequently than once every six months" (42 U.S.C. § 675(5)(B)) and a permanency hearing is held "no later than 12 months after the date the child is considered to have entered foster care" (42 U.S.C. § 675(5)(C)); and defines the date a child is considered to have entered foster care as being "the earlier of" the "date of the first judicial finding that the child has been subjected to child abuse or neglect" or the "date that is 60 days after the date on which the child is removed from the home" (42 U.S.C. § 675(5)(F)).

The changes made by the ASFA indicated that Congress intended to provide federal funding to, among other things, minimize delay in juvenile dependency proceedings, reduce the length of time that dependent children stay in a temporary placement, and increase the number of adoptions.

Section 361.5, subdivision (a) now states in pertinent part: "[W]henever a child is removed from a parent's . . . custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father . . . . Child welfare services, when provided, shall be provided as follows: [¶] . . . [¶] (2) For a child who, on the date of initial removal from the physical custody of his or her parent or guardian, was under the age of three years, court-ordered services shall not exceed a period of six months *from the date the child entered foster care.* [¶] . . . [¶] *Regardless of the age of the child, a child shall be deemed to have entered foster care on the earlier of the date of the jurisdictional hearing held pursuant to Section 356 or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent or guardian.*" (Stats. 2000, ch. 824, § 5, italics added.)

Although section 361.5, subdivision (a) uses the date that the child entered foster care as a benchmark, other statutes speak in terms of the dispositional hearing.

Section 366.21, subdivision (e) states in pertinent part: "At the review hearing *held six months after the initial dispositional hearing*, the court shall

order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . ." (Stats. 2000, ch. 910, § 9, italics added.)

And section 366, subdivision (a)(1) states in pertinent part: "The status of every dependent child in foster care shall be reviewed periodically as determined by the court but no less frequently than once every six months, *as calculated from the date of the original dispositional hearing,* until the hearing described in Section 366.26 is completed. The court shall consider the safety of the child and shall determine all of the following: [¶] (A) The continuing necessity for and appropriateness of the placement. [¶] (B) The extent of the agency's compliance with the case plan in making reasonable efforts to return the child to a safe home and to complete any steps necessary to finalize the permanent placement of the child. [¶] . . . [¶] (D) The extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care." (Stats. 2000, ch. 909, § 4, italics added.)

But section 366.21, subdivision (f) uses the date that the child entered foster care as the benchmark for setting the permanency hearing: "The permanency hearing *shall be held no later than 12 months after the date the child entered foster care, as that date is determined pursuant to subdivision (a) of section 361.5.* At the permanency hearing, the court shall determine the permanent plan for the child, that shall include a determination of whether the child will be returned to the child's home and, if so, when, within the time limits of subdivision (a) of Section 361.5. . . ." (Stats. 2000, ch. 910, § 9, italics added.)

### III

The apparent lack of consistency among the aforesaid statutes compels us to divine what the Legislature intended when it amended the statutory scheme to conform to federal law.

We are not the first to take a crack at this problem. The Judicial Council did so in adopting rule 1460 of the California Rules of Court, which states in pertinent part: "(a) The case of a dependent child of the court shall be set for review hearing as follows: [¶] (1) If the child was removed from the custody of the parent . . . under section 361 or 361.5, the review hearing shall be held within six months after the date the child entered foster care, as defined

in rule 1401 . . . ." (Further rule references are to the California Rules of Court.) Rule 1401(a) states in part: " 'Date the child entered foster care' means: (A) The date on which the court sustained the petition filed under section 300 or 60 days after the initial removal of the child [from physical custody of the parent], whichever is earlier . . . ."

We agree with the Judicial Council's construction of the statutes because, as we shall explain, (1) that construction is consistent with the Legislature's apparent purpose in amending sections 361.5 and 366.21, and also is consistent with the usual operation of the statutory scheme concerning dependent children, and (2) a contrary interpretation could result in absurd situations.

■ An appellate court's role in interpreting statutory language is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. Statutes are not construed in isolation, but must be read with reference to the entire scheme of law of which the statutes are part so that the whole can be harmonized and retain effectiveness. If statutory language is susceptible to more than one interpretation, courts must adopt the meaning that conforms to the spirit of the statutory scheme and reject that which would result in absurd consequences unintended by the Legislature. In applying these principles, courts must keep in mind the object to be achieved, and the evil to be prevented, by the legislation. (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1064-1065 [77 Cal.Rptr.2d 202, 959 P.2d 360].)

The Legislature has declared that the "purpose of [California's dependency statutes] is to provide for the protection and safety of . . . each minor under the jurisdiction of the juvenile court and to preserve and strengthen the minor's family ties whenever possible, removing the minor from the custody of his or her parents only when necessary for his or her welfare . . . . When removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective. . . ." (§ 202, subd. (a).) Accordingly, the Legislature has stated that, except where services need not be provided under circumstances specified by the statutory scheme, the juvenile court shall order the social services agency to provide child welfare services to the child and parents when the child is removed from parental custody. (§ 361.5.) Moreover, the Legislature has recognized a dependent child's "need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).)

Hence, the Legislature has limited the amount of time that reunification services may be provided. (§ 361.5, subd. (a); *In re Marilyn H.* (1993) 5

Cal.4th 295, 308 [19 Cal.Rptr.2d 544, 851 P.2d 826] [the Legislature "recognized that, in order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate"].) And the Legislature has provided for periodic judicial review of a parent's progress in dealing with the problems that led to the dependency, in order to determine the "continuing necessity for and appropriateness of the placement." (§ 366.)

Thus, California's dependency system envisions that, where the provision of reunification services is appropriate to address the problems which led to removal of a child from parental custody, there will be prompt review of the parent's and the child's progress in benefiting from such services so they may be reunited whenever possible, and as expeditiously as possible. (§ 202, subd. (a); *In re Joseph B.* (1996) 42 Cal.App.4th 890, 900 [49 Cal.Rptr.2d 900]; *In re Joanna Y.* (1992) 8 Cal.App.4th 433, 438 [10 Cal.Rptr.2d 422].)

As we have noted (pt. II, *ante*), sections 361.5 and 366.21 were amended to conform California law to federal law after Congress enacted the ASFA to, among other things, minimize delay in juvenile dependency proceedings and reduce the time that dependent children stay in temporary placement. These goals promote a fundamental objective of California's dependency system, minimizing delay in the proceedings. "The dependency system seeks to keep to a minimum the amount of potential detriment to a minor resulting from . . . delay. [Citation.] '[D]elay disserves the interests of the minor, the parents, and the courts, and is clearly inconsistent with the intent of the Legislature.' [Citation.]" *(Renee S. v. Superior Court, supra,* 76 Cal.App.4th at p. 193.)

■ It is this purpose that the Legislature apparently had in mind when it amended section 361.5, subdivision (a)(1) and (2) to provide that the duration of court-ordered services shall be measured from "the date the child entered foster care," i.e., the earlier of the date of the *jurisdictional hearing* or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent. And it is this purpose that the Legislature apparently had in mind when it amended section 366.21, subdivision (f) to provide that the timing of the permanency hearing is measured from the date the child entered foster care.

Calendaring the six-month review hearing from the date the child entered foster care is consistent with the statutory purpose to minimize delay in juvenile dependency proceedings, and reduce the time that dependent children stay in temporary placement, because it advances the court's evaluation of a parent's progress in responding to services and expedites the court's determination of whether reunification is appropriate.

Moreover, calendaring the six-month review hearing from the date the child entered foster care is consistent with section 366, subdivision (a)(1), which contemplates that a review hearing may be scheduled *prior* to six months from the date of the initial dispositional hearing.

Although the Legislature left intact the language in section 366.21, subdivision (e), stating the six-month review hearing is to be "held six months after the initial dispositional hearing," this appears to have been an oversight. Experience has shown that, in dependency proceedings, juvenile courts routinely hold the dispositional hearing immediately after the jurisdictional hearing on the same date. The Legislature may have been laboring with that understanding. However, on some occasions, as in this case, a dispositional hearing is held on a date after the jurisdictional hearing. In those circumstances, measuring the review hearing from the date of the initial dispositional hearing, rather than the date of the jurisdictional hearing, would result in delaying the review. Such a result is inconsistent with the apparent purpose of the Legislature's amendments to section 361.5, subdivision (a) and section 366.21, subdivision (f).

Moreover, measuring the review hearing from the date of the initial dispositional hearing could result in an absurdity. Consider the following situation for example: a child is under the age of three when she is initially removed from parental custody; the jurisdictional hearing is held within 60 days of said removal, so that "the date the child entered foster care" would be the date of the jurisdictional hearing (§ 361.5, subd. (a)); but the matter is continued for a dispositional hearing at a later date. Because the reunification services authorized by section 361.5, subdivision (a)(2) cannot exceed a period of six months from the date the child entered foster care, i.e., the date of the jurisdictional hearing, the services would have ended prior to the date of the review hearing if that hearing is measured from the date of the initial dispositional hearing. Thus, there would be dead time between the end of reunification services and the court's review of the effectiveness of those services in order to determine whether the child should be returned to parental custody. In other words, there would be unnecessary delay in determining the "continuing necessity for and appropriateness of the placement." (§ 366; see § 366.21, subd. (e).) Such dead time and delay would be contrary to the interests of the child, the parent, and the court (see *Renee S. v. Superior Court, supra,* 76 Cal.App.4th at p. 193); would be inconsistent with the apparent intent of the statutory scheme (*ibid.*); and would be, in a word, absurd.

■ ▬ ■ ■ For all the reasons stated above, we construe the statutory scheme to require the six-month review hearing to be held no later

than six months from the earlier of the following two dates: the date of the jurisdictional hearing or "the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent or guardian." (§ 361.5, subd. (a).)[2]

## DISPOSITION

The juvenile court erred in scheduling the review hearing on a date six months from the day of the dispositional hearing. However, we cannot provide any meaningful relief because the date of the review hearing has come and gone while this appeal was pending (see pt. I, *ante*). Accordingly, the order adjudging the minor to be a dependent child and setting the status review hearing is affirmed.

Blease, J., and Sims, J., concurred.

---

[2]DHHS seeks clarification of the phrase "the date on which the child was initially removed from the physical custody of his or her parent or guardian." (§ 361.5, subd. (a).) In view of the Legislature's intent to conform California's dependency laws to changes in federal law (see pt. II, *ante*), we construe this phrase to mean the date on which the child was initially removed from the home of a parent or guardian by a peace officer pursuant to section 305 or by a social worker pursuant to section 306. (See 42 U.S.C. § 675(5)(F).)