[No. D019036. Fourth Dist., Div. One. Aug. 31, 1993.]

TIFFANY NICOLE SANDEFFER, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Francis J. Bardsley, Public Defender, and Gary R. Nichols, Deputy Public Defender, for Petitioner.

No appearance by Respondent.

Edwin L. Miller, Jr., District Attorney, Paul M. Morley and Richard J. Sachs, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**FROEHLICH, J.**—Penal Code[1] section 1054.3 requires defense counsel to disclose to the prosecuting attorney the names of expert witnesses who are to

---

[1]All statutory references are to the Penal Code unless otherwise specified.

be called to testify at trial, and further requires the production of reports or statements prepared by the experts in connection with the case. This petition raises the question whether a trial judge, when convinced that a defense attorney plans to call an expert witness, can issue a discovery order requiring the production of reports and other materials prepared by the witness, notwithstanding the defense attorney's protestation that a decision has not as yet been made to call the witness. We conclude the trial judge does not have this power.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 1992, the People filed an information charging Tiffany Nicole Sandeffer with murdering her newborn baby. Set for jury trial on January 19, 1993, the case was continued three times and ultimately calendared for trial on July 27, 1993.

On February 8, with a March 23 trial then on the horizon, the prosecutor filed a motion for discovery asserting defense counsel had failed to provide section 1054.3 disclosures despite three informal requests by the People. After hearing argument, the court on March 3 ordered defense counsel to produce, among other things, the names, addresses, statements and real evidence pertaining to intended witnesses; and, in the case of experts, "all notes and/or reports (whether handwritten or typed) of all expert witnesses and/or their representative which were relied upon by any expert witness whom the defense expects to call during trial." The order required immediate disclosure and was to continue in effect through trial.

On April 13, having received no discovery, the prosecutor filed a motion for discovery and/or sanctions. Defense counsel opposed the motion asserting that he had no discoverable material. Questioning defense counsel's veracity, the district attorney asked the court to inquire whether defense counsel intended to call certain named witnesses, among them Drs. Murphy, McTigue and Hickman, whose names appeared on jail entry logs. When defense counsel declined to answer the question directly, the court apparently became somewhat irritated, exclaiming "You're not leaving here till you tell me yes or no."

After further colloquy, the court continued the matter to May 3. On April 29, before the hearing, defense counsel filed a declaration stating: "Since its

inception, this case has mainly concerned itself in discovery and investigation, by both parties, as to whether the defendant is the mother of the victim, Baby Doe, herein. [¶] Through defense investigation this issue has been resolved and has resulted in a stipulation being entered into by the parties that the defendant is the mother of the Baby Doe. [¶] The defense is exploring at least two possible mental defenses in this case. Only one of the possible defenses will be presented at trial for tactical reasons. There are teams of defense experts who are exploring the two separate defenses. [¶] One team of experts has reached a conclusion on one possible defense, the other has not. [¶] It is expected that the second team will reach a conclusion the week of May 3. At that time, a tactical decision will be considered as to which defense will be put forth at the time of trial. [¶] At that time, it will be known who I intend to call as witnesses at trial."

At the continued hearing on May 3, the court reincorporated its March 3 order and ruled, absent a showing of good cause for noncompliance, it would consider excluding witnesses at trial. The prosecutor requested the court to monitor discovery and make a record for contempt and, agreeing, the court ordered the parties back on a regular basis.

On May 10 the district attorney reported to the court that defense counsel had identified five witnesses, produced a psychological report and raw data from Dr. Murphy, and produced a psychological report from Dr. McTigue. Defense counsel further advised he would be providing a copy of the videotape of Dr. McTigue's sodium amytal interview with defendant. After asking defense counsel about the existence of other reports or notes, the court ordered production of the videotape as well as Dr. McTigue's clinical notes.

At the May 25 conference, the prosecutor asked the court to inquire if Dr. Susan Hickman was going to be a witness. Defense counsel replied the psychologist had interviewed defendant within the past 45 days but had not prepared a written report, and counsel had not made a decision whether to call the doctor. Following another fairly contentious exchange, Judge Guy-Schall found defense counsel was being so ambiguous that she believed, based on past history with other witnesses about whom the lawyer had made the same kind of statements, "there is every probability [Dr. Hickman] will be a witness." Cautioning him not to direct the expert to avoid writing a report, the court ordered defense counsel to provide Dr. Hickman's full name and address, all reports the doctor had prepared or relied upon, and the doctor's notes by May 28. At that time, the case was set for trial July 27.

Defendant immediately filed this petition challenging the court's May 25 order compelling disclosure. We issued a stay and set the matter for hearing.

## DISCUSSION

■ Two-way discovery between the prosecution and defense is a relatively new phenomenon that came about with Proposition 115, an initiative approved by the voters in 1990 and enacted into the Penal Code as section 1054 et seq. (the act). As the Supreme Court points out, all such discovery is now "governed exclusively by"—and "barred except as provided by"—the act. (*In re Littlefield* (1993) 5 Cal.4th 122, 129 [19 Cal.Rptr.2d 248, 851 P.2d 42].)

Section 1054.3 regulates the scope of discovery, and requires the defendant to disclose:

"(a)   The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial.

"(b)   Any real evidence which the defendant intends to offer in evidence at the trial." The reference to persons intended to be called as witnesses at trial under subdivision (a) includes " 'all witnesses [the defense] reasonably anticipates it is likely to call . . . .' " (*Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 375 [285 Cal.Rptr. 231, 815 P.2d 304].)

Section 1054.7 focuses on timing and provides, in pertinent part, ". . . disclosures required under this chapter shall be made at least 30 days prior to the trial, . . ."

■ Defendant's first contention is that the court's order violated the time requirements of section 1054.7. Since the trial was set for July 27, the court's order required production of materials more than 30 days before the date of the trial, contrary, it is argued, to the time requirements of the section. We cannot accept this construction of section 1054.7. The statute compels parties to make their required disclosures "at least 30 days prior to the trial." (§ 1054.7.) Use of the phrase "at least" connotes a bare minimum of 30 days and implies disclosure may be ordered more than 30 days before trial.

Giving effect to the words "at least" not only carries out one of the cardinal rules of interpretation (construction of the statute so as to give

import to every word (see 2A Sutherland, Statutory Construction (5th ed. 1992) § 46.06, p. 119), but also comports with common sense. The reality of practice is that criminal cases are continued repeatedly, not infrequently within 30 days of trial. Courts must have the flexibility to order production by a specific date in complex litigation such as this where discovery at the tail end of the case would defeat the act's purposes.[2] Hence, we conclude that disclosure may properly be compelled on a date more than 30 days preceding the date set for trial. Such an order may be particularly appropriate where, as here, the prosecution asserts it provided an enormous amount of discovery to the defendant but the defendant is not reciprocating.

■ That the court's order was timely does not, however, answer the question as to the propriety of its substance. The order here required the disclosure of the full name of a suspected witness and the production of her reports and notes at a time when the witness had not been identified by defense counsel as a trial witness. Section 1054.5, subdivision (b) empowers the court to make "any order necessary to enforce the provisions of this chapter." Presumably the court under this authority may order defense counsel to produce information or materials the court reasonably finds have been improperly withheld, notwithstanding counsel's protestations to the contrary. (See *In re Littlefield, supra,* 5 Cal.4th at p. 131 et seq., where the court affirmed a trial court order requiring defense counsel to ascertain the address of a witness even though counsel protested he did not have it.) We apprehend, however, that the determination whether to call a witness is peculiarly within the discretion of counsel. Even when counsel appears to the court to be unreasonably delaying the publication of his decision to call a witness, it cannot be within the province of the trial judge to step into his shoes. While the court may suffer understandable annoyance at perceived violation by defense counsel of the discovery provisions of the act, it is limited to the remedies provided in the act for such stonewalling. The court may delay or prohibit the testimony of a witness whose identity or paperwork was unreasonably withheld. (§ 1054.5, subd. (b).) Accordingly, an attorney who flagrantly violates the act and the court's orders (as the court conceived to be the conduct of defense counsel in this case) takes a calculated risk that severe sanctions during trial may be imposed.

Our conclusion that the court's discovery order was in excess of its jurisdiction permits our avoidance of an analysis of the detail of the order. We nevertheless are motivated to make brief comment for the lower court's possible guidance in terms of future orders on the subject. This order

---

[2]The act is by its own terms to be interpreted to "promote the ascertainment of truth in trials by requiring timely pretrial discovery" and "save court time in trial and avoid the necessity for frequent interruptions and postponements" among other things. (§ 1054, subds. (a), (c).)

required production not only of the expert's report, if any, but also her "notes." The new provisions of the act are exclusive in the sense that "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States." (§ 1054, subd. (e).) Section 1054.3, subdivision (a) provides that discovery of information pertaining to expert witnesses shall "includ[e] any reports or statements [of the expert] made in connection with the case, and includ[e] the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial." ▮▮ ▬ ▬ We are of the opinion that an order requiring the expert to produce his "notes" in most circumstances would go beyond the specification of discoverable items set forth in the statute.[3]

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate the May 25, 1993, order. The stays issued by this court on May 28, 1993, and June 22, 1993, are hereby vacated.

Kremer, P. J., and Todd, J., concurred.

---

[3]It should be noted, also, that the disclosure requirements of the act do not nullify various applicable privileges. (See *Rodriguez* v. *Superior Court* (1993) 14 Cal.App.4th 1260, 1267, 1269-1270 [18 Cal.Rptr.2d 120], and § 1054.6.)