[No. D020287. Fourth Dist., Div. One. May 16, 1994.]

JAMES EDWARDS WOODS, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Francis J. Bardsley, Public Defender, Gary R. Nichols and John Jimenez, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Craig E. Fisher, Deputy District Attorneys, for Real Party in Interest.

## Opinion

**HUFFMAN, J.**—In this case, we are called upon to decide if the reciprocal discovery statute, Penal Code section 1054.3, subdivision (a), requires a defendant to disclose the results of standardized tests taken by a psychologist where the psychologist was identified as a defense expert, the psychologist relied on the test results in forming an opinion and his opinion was disclosed to the district attorney. We conclude the defense must produce the results.

### Factual and Procedural Background

Woods was charged with forcible rape, rape with a foreign object and robbery. His lawyer retained Dr. Raymond Murphy, a clinical psychologist, to evaluate Woods's propensity for sexual violence. Dr. Murphy conducted a "Clinical Interview/History" and administered a variety of standardized tests including "Projective Drawings," the "Bender Visual Motor Gestalt Test,"

the "Ammons Test of Intelligence," and the "Rorschach Psychodiagnostic Test," all of which required verbal or written responses from Woods. Dr. Murphy wrote a report evaluating Woods which was produced to the People pursuant to Penal Code section 1054.3.[1]

The People thereafter attempted to obtain pretrial discovery of Woods's responses to the tests. Defense counsel objected the responses were excluded from discovery under section 1054.3, subdivision (a), our decisions in *Sandeffer* v. *Superior Court* (1993) 18 Cal.App.4th 672 [22 Cal.Rptr.2d 261] and *Hines* v. *Superior Court* (1993) 20 Cal.App.4th 1818 [25 Cal.Rptr.2d 712], and the Fifth Amendment privilege against self-incrimination. As defense counsel explained: "What I'm suggesting to the court is if Mr. Woods . . . hypothetically . . . is asked is this black or white, he gives an answer to that doctor, he is giving a statement to that doctor. It is a statement of the defendant. That is exempted from a discovery order, and that is our reading of the law . . . ." Rejecting the argument, the trial court ordered disclosure.

Woods filed a petition for writ of mandate which we denied without comment. He followed with a petition for review which prompted the Supreme Court to transfer the matter back to us with directions to vacate the order denying Woods's petition and issue an alternative writ. Woods entered a plea soon after the transfer. At the request of the prosecution and defense, who concede the question is technically moot but assert it is one of continuing public interest and likely to recur, we exercised our discretion to entertain the petition and issued an order to show cause.

DISCUSSION

Section 1054.3, added to the Penal Code following adoption of the Crime Victims Justice Reform Act (Proposition 115), is perhaps one of "the most significant and controversial" parts of the new reciprocal discovery scheme. (*Izazaga* v. *Superior Court: Affirming The Public's Cry To Unshackle The Criminal Prosecution System* (1992) 23 Pacific L.J. 1721, 1723.) Requiring the defense to disclose witnesses other than the defendant that it intends to call at trial and produce statements, reports and real evidence, the statute opens up "avenues of discovery" previously closed to the prosecution in California. (*Id.* at p. 1724; see also *Proposition 115: The Fifth Amendment and Prosecutorial Discovery* (1991) 13 Crim. Justice J. 115.)

Section 1054.3 provides in pertinent part:

"The defendant and his or her attorney shall disclose to the prosecuting attorney:

---

[1]All statutory references are to the Penal Code unless otherwise specified.

"(a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial." (§ 1054.3, subd. (a).) The question here is whether the "results of physical or mental examinations" include the defendant's responses to standardized tests given by a psychologist identified as a defense expert where (1) the psychologist relied on the responses in reaching his conclusions, (2) the psychologist referred to the responses in his report and (3) the report was provided to the People. We conclude the test results must be disclosed.

As a preliminary matter, we reject the public defender's argument that disclosure of the test results is precluded by *Sandeffer* v. *Superior Court, supra,* and *Hines* v. *Superior Court, supra.* In *Sandeffer,* we held the trial court cannot require defense counsel to disclose the identity of, or produce reports and notes by, an expert the attorney has not yet determined to call as a witness. ( *Sandeffer* v. *Superior Court, supra,* 18 Cal.App.4th at p. 678.) In *Hines,* where the expert had been identified, we determined the statute did not provide for pretrial disclosure of random notes in the expert's file, interview notes reflecting the defendant's statements, preliminary drafts of the expert report, the expert's notes to himself, interim conclusions, or subsidiary reports on which the expert may rely. (*Hines* v. *Superior Court, supra,* 20 Cal.App.4th at p. 1823.) We did, however, interpret the statute to require disclosure of the expert's notes of factual determinations made during an examination, concluding, in a comment inconsistent with the position the public defender now urges, that "the statutory phraseology of 'reports or statements . . . including the results of . . . examinations, scientific tests, experiments or comparisons which the respective parties intend to offer in evidence . . .' *reasonably should include the original documentation of the examinations, tests, etc.*" (*Id.* at p. 1822, italics added.) Unlike our "expert notes" decisions, the case before us involves only the original documentation of examinations—the underlying raw data from standardized psychological and intelligence tests.[2]

The starting point in our analysis is the statute itself. Section 1054.3, subdivision (a), expressly requires the defense to disclose "any reports . . .

[2]We note, while the petition mentions Dr. Murphy's "Clinical Interview/History" (interview), the parties focus exclusively on the test results without any discussion of the interview. We assume this is because the interview was discussed at length in the psychologist's report which the defense voluntarily produced·for the prosecution. (See *Rodriguez* v. *Superior Court* (1993) 14 Cal.App.4th 1260, 1269-1270 [18 Cal.Rptr.2d 120].) In any event, since the interview is not in dispute, we limit our opinion to the test results.

of experts" including "the results of physical or mental examinations, scientific tests [and] experiments" intended to be offered at trial. The statutory language squarely covers the physical and mental tests in our case. We add that the statute makes no exceptions: it does not, for example, exempt psychologists from the list of experts or exclude, for instance, Rorschach tests from the results of mental examinations that must be produced. The discovery here falls within the plain meaning of the statute.

The defense counters that, although the statute requires the disclosure of "results of . . . examinations," production may not be compelled for results which are the defendant's verbal or written responses to examinations. The argument is the statute exempts all statements of the defendant from disclosure, being expressly limited in its application to statements of persons "other than the defendant."

Contrary to the public defender's argument, however, the statute does not unequivocally exempt anything that is spoken or written by the defendant.[3] As noted by the People, the phrase "other than the defendant" in subdivision (a) of section 1054.3 merely excludes the defendant from the list of those persons whose names, addresses and written and/or recorded statements must be disclosed because they are intended to be called as witnesses for the defense at trial. Because the test results are expressly discoverable under the statute, admissible through the expert, and irrelevant to the defendant's intention to testify as a witness at trial, there is no statutory preclusion to disclosure.

Our interpretation is consistent with the professed intent behind Proposition 115. ■ The law was designed to "restore balance to our criminal justice system [and] create a system in which justice is swift and fair." (Ballot Pamp., preamble of proposed law (June 5, 1990) p. 33, reprinted in Cal. Const. art. I, § 14.1, note (Deering's Supp. 1994).) As we have said in the past: "The purpose of section 1054 et seq. is to promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial. [Citation.] Reciprocal discovery is intended to protect the public interest in a full and truthful disclosure of critical facts, to promote the People's interest in preventing a last minute defense, and to reduce the risk of judgments based on incomplete testimony. [Citation.]" (*People* v. *Jackson* (1993) 15 Cal.App.4th 1197, 1201 [19 Cal.Rptr.2d 80].) ■ Requiring pretrial disclosure of the raw results of standardized psychological and intelligence tests administered and relied upon by an expert the defense intends to call at trial allows access to information necessary to prepare the case, reduces the

---

[3]Indeed, if the public defender's argument is carried to its logical conclusion, statements of lay witnesses that refer to anything said by the defendant would also be excluded.

chance of surprise at trial, furthers the attainment of truth and lessens the risk of a judgment based on incomplete testimony. In short, it advances the statutory goals.

 Finding the discovery authorized by section 1054.3 is not, however, the end of the analysis because disclosure may still not be compelled if the information is privileged. (§ 1054.6.) The issue thus becomes whether, as defense counsel asserted below, disclosure violates the Fifth Amendment privilege against self-incrimination.

The privilege against self-incrimination has been a subject of continuing scrutiny and refinement over the years. Early case law interpreted the privilege broadly to protect both testimonial and physical evidence. (*Boyd* v. *United States* (1886) 116 U.S. 616, 631-632 [29 L.Ed. 746, 751-752, 6 S.Ct. 524].) Later opinions carved inroads in the scope of the privilege, restricting its application to testimonial, as opposed to physical, evidence. (*Schmerber* v. *California* (1966) 384 U.S. 757, 765 [16 L.Ed.2d 908, 916-917, 86 S.Ct. 1826].) More recently, the United States Supreme Court retracted the privilege again—this time limiting it to information that is intimate, personal and incriminating to the defendant—in holding discovery of the workpapers of an accountant who prepared the defendant's tax returns constitutional even though the papers undoubtedly contained a significant amount of raw data coming directly from the defendant. (*Fisher* v. *United States* (1976) 425 U.S. 391, 394, 405-409 [48 L.Ed.2d 39, 46, 52-55, 96 S.Ct. 1569].)

 Not only must the testimony be personal and incriminating to the defendant for the privilege against self-incrimination to apply: it must also be compelled. (425 U.S. at pp. 396-397 [48 L.Ed.2d at pp. 47-48]; *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893].) In *Williams*, the United States Supreme Court examined a Florida discovery statute that required pretrial disclosure of the defendant's intention to use alibi witnesses, along with names and addresses of the witnesses. Rejecting the argument that supplying the People with elements of his defense compelled the defendant to testify against himself and implicated his right to wait to the end of trial to decide how to defend against the charges, the court recognized the state's interest in protecting itself against an "eleventh hour defense" (*Williams* v. *Florida, supra,* 399 U.S. at p. 81 [26 L.Ed.2d at p. 450]) and concluded the statute did not affect the crucial decision to call alibi witnesses (*id.* at p. 85 [26 L.Ed.2d at p. 452]). As the court explained: "Nothing in such a [pretrial notice-of-alibi] rule requires the defendant to rely on an alibi or prevents him from abandoning the defense; these matters are left to his unfettered choice. That choice must be made, but the pressures that bear on his pretrial decision are of the same nature as those that would induce him

to call alibi witnesses at the trial." (*Id.* at pp. 84-85 [26 L.Ed.2d at pp. 451-452].) The statute may compel the defendant to disclose names of alibi witnesses he intends to put on the stand earlier than the time of trial but mere acceleration of that disclosure cannot be deemed "compelled" under the Fifth Amendment. (*Id.* at p. 85 [26 L.Ed.2d at p. 452].)

In summary, for the Fifth Amendment to apply, material must be: (1) incriminating, (2) personal to the defendant, (3) obtained by compulsion, *and* (4) testimonial. (*Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 366 [285 Cal.Rptr. 231, 815 P.2d 304].) ▉ While the test results here can be characterized as personal to the defendant and even testimonial, we cannot say the defendant's interpretation of ink blots, his drawings and his responses to standardized tests—whether, to use counsel's example, defendant has answered that something is black or white—are necessarily incriminating. Nor can we say they are "compelled" by Fifth Amendment standards.

Like the tactical decision to call alibi witnesses, Woods was making a tactical trial decision: his strategy was to defend against the charges by relying on the expert's opinion as to his propensity (or lack of propensity) for sexual violence. Woods put his psychological proclivities into issue through his expert. The test results supported the expert's opinion, they were intended to be introduced at trial and they would be disclosed to the district attorney at the latest when the expert testified. Just as in *Williams*, accelerating the disclosure is not compulsion within the meaning of the Fifth Amendment. (*Williams* v. *Florida, supra,* 399 U.S. at p. 85 [26 L.Ed.2d at p. 452]; *Izazaga* v. *Superior Court, supra,* 54 Cal.3d at pp. 368-369.)

We recognize, however, that not all trial tactics pass the test of the Fifth Amendment. For example, in *Brooks* v. *Tennessee* (1972) 406 U.S. 605 [32 L.Ed.2d 358, 92 S.Ct. 1891], the United States Supreme Court struck down on Fifth Amendment grounds a Tennessee law requiring a criminal defendant who testifies to take the stand before any other defense witness. Like *Williams*, the statute involved trial tactics—the defendant's decision to testify at trial. However, as the court explained, although the defendant usually has some idea of the strength of his evidence, he may not be sure until the close of the prosecution's case whether his testimony will be necessary or helpful and may not be willing to subject himself to the serious risk of impeachment and cross-examination that his decision to take the stand carries with it. (*Brooks* v. *Tennessee, supra,* 406 U.S. at p. 610 [32 L.Ed.2d at pp. 362-363].) The Tennessee law "cut[] down on the privilege [to remain silent] by making its assertion costly," the price exacted kept a defendant from ever taking the stand unless he testified first, and the statute as such violated the Fifth Amendment. (*Id.* at pp. 610-611 [32 L.Ed.2d at p. 363].)

There is a difference between *Brooks* and strategic decisions about various defenses that may be asserted at trial—the alibi defense, intoxication, and mental defenses including battered spouse syndrome or nondisposition to commit the crime as asserted here. A defendant who is required to make a pretrial disclosure of the alibi witnesses he intends to call at trial is for all practical purposes in the same shoes as one presenting a mental defense who must turn over his expert's test results before trial: nothing requires the defendant to rely on the defense; no different pressures distinguish the pretrial decision to use the defense from those that are brought to bear at trial; and nothing penalizes the defendant if he abandons the defense at trial. The defendant has a change in timing but is not facing the dreadful downside of taking the stand in *Brooks*.

■ By way of a postscript, we note the other privileges raised by the defense—Sixth Amendment right to counsel, attorney-client privilege and work product privilege—were not asserted to the trial court. They were raised for the first time in the writ proceedings, almost as an afterthought without argument or citation to authority. We deem the issues waived. (*In re Marriage of Laursen & Fogarty* (1988) 197 Cal.App.3d 1082, 1084, fn. 1 [243 Cal.Rptr. 398]; *Troensegaard* v. *Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1993) ch. 9:21.)

We believe, however, that had the issues been preserved, they would not compel a different result. First, there is no reason to suppose the Sixth Amendment right to counsel is implicated given that only experts helpful to the defense need be disclosed and their test results will be available in any event when the experts testify at trial. (*Izazaga* v. *Superior Court, supra,* 54 Cal.3d at p. 379.) Second, while communications with an expert retained to assist in the preparation of a defense may initially be protected by the attorney-client privilege, the privilege is waived where as here the expert is identified, a substantial portion of his otherwise privileged evaluation is disclosed in his report, and the report is released. (Evid. Code, § 912, subd. (a).) Third, electing to present the expert as a witness destroys the work product privilege. (See *United States* v. *Nobles* (1975) 422 U.S. 225, 239-240 [45 L.Ed.2d 141, 154-155, 95 S.Ct. 2160].)

■ Finally, the defense protests the vice of acceleration is that disclosure must be made solely to preserve the option of calling the witness (§ 1054.5) even though not all reasonably anticipated witnesses are actually called to the stand. As such, at least in the case of confidential statements, the public defender argues there should be no waiver until the expert testifies.

We sympathize with the position but cannot accept the argument as a general proposition without doing damage to the statutory objectives of ascertaining the truth, saving time in trial, avoiding the necessity of postponements and protecting against undue delay. (§ 1054, subds. (a), (c), (d).) This is especially true in cases of "psychological character evidence" where as here the accused has an expert testify about personality traits to indicate his nondisposition to commit the offense. (See *People* v. *Stoll* (1989) 49 Cal.3d 1136, 1153 [265 Cal.Rptr. 111, 783 P.2d 698]; *People* v. *Jones* (1954) 42 Cal.2d 219, 225 [266 P.2d 38].) "No precise legal rules dictate the proper basis for an expert's journey into a patient's mind to make judgments about his behavior." (*People* v. *Stoll, supra,* 49 Cal.3d at p. 1154.) When delving into such murky, subjective and debatable diagnostic processes, more akin to "a learned professional art, rather than the purported exact 'science' with which *Kelly/Frye* is concerned" (*id.* at p. 1159), the greater the pretrial access to the underlying data, the less chance there is for the "eleventh hour defense," guesswork at trial, incomplete cross-examination or delay to conduct the necessary discovery.

## DISPOSITION

The petition for writ of mandate is denied.

Benke, Acting P. J., and Froehlich, J., concurred.

Petitioner's application for review by the Supreme Court was denied August 11, 1994. Mosk, J., was of the opinion that the application should be granted.