[No. B107598. Second Dist., Div. Six. Mar. 17, 1997.*]

TODD HUBBARD, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

*Review granted June 18, 1997. Review was dismissed on September 23, 1998, and the opinion was directed to be published.

**COUNSEL**

Kenneth D. Clayman, Public Defender, and Todd W. Howeth, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Michael D. Bradbury, District Attorney, and Kevin Drescher, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**YEGAN, J.**—Here we hold that the prosecutor is not entitled to discover notes prepared by a defense investigator that relate to an interview of a "prosecution" witness unless and until the defense announces an intent to call the defense investigator as a witness. Stated another way, the defense is not required to disclose statements it obtains from prosecution witnesses that may be used to refute the prosecution's case during cross-examination.

Petitioner was charged with attempted murder and kidnapping. During the cross-examination of Tom Smith, one of the victims, defense counsel sought to establish that Smith coached Tonye Hurley, another victim, into changing her testimony. At this point, the prosecutor moved for the production of all

statements obtained by the defense relating to any prosecution witness. Respondent court inquired whether a defense investigator had interviewed Ms. Hurley. Defense counsel candidly stated that Ms. Hurley had been interviewed by his investigator.

Respondent court, over the objection of petitioner, ordered that "the People will be entitled to all prior statements [made] by any witness to your investigator or to anyone your investigator interviews as the case of the current report that's at issue once you decide to use anything from that prior statement in cross." It reasoned as follows: "Once we get to trial and . . . [the statements are used as a basis for cross-examination], we are outside the discovery statute and you need to turn it over if you use it in any way in cross . . . ." We hasten to observe that the prosecution is never "outside of the discovery statute." If the discovery statute does not provide for prosecutorial discovery, it is not entitled thereto before, during, or after trial. (See *post*, p. 1167.)

Petitioner promptly sought writ review in this court. He asserts that the reports were obtained from witnesses that he does not intend to call and, therefore, he is not required to produce such reports. (Pen. Code, § 1054.3, subd. (a); *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 377, fn. 14 [285 Cal.Rptr. 231, 815 P.2d 304] (hereafter *Izazaga*).)

After we ordered a temporary stay, respondent court modified the discovery order to read as follows: "The defense is ordered to prepare copies of documentation of prior statements by all prosecution witnesses, so they can be immediately available for disclosure to the prosecution if and when the defense uses such statements for impeachment in cross-examination. These orders are limited to *statements used* in cross-examination, and do not include collateral matter in the defense reports."

We issued an alternative writ of mandate with the discovery stay extant. The matter proceeded to trial and petitioner was convicted. While the issue is moot as to petitioner, his counsel alleges that similar discovery orders have been made by respondent court. We accept this verified allegation and consider the merits of the writ petition. ■ "[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; see also *In re Arias* (1986) 42 Cal.3d 667, 673, fn. 1 [230 Cal.Rptr. 505, 725 P.2d 664].)

"Although criminal discovery was first envisioned as a two-way street (*Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 60 [22 Cal.Rptr. 879, 372 P.2d

919, 96 A.L.R.2d 1213]), '. . . the road to prosecutorial discovery was effectively closed in *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320. . . .' (*Izazaga*[, *supra*, 54 Cal.3d at p. 370].) The road was then reopened by adoption of Proposition 115, which the California Supreme Court upheld in *Izazaga* in the face of claims of violation of the United States and California Constitutions. (*Izazaga*, *supra*, 54 Cal.3d at pp. 364-379.)" (*Clinton K.* v. *Superior Court* (1995) 37 Cal.App.4th 1244, 1247-1248 [44 Cal.Rptr.2d 140].)

■ As a general rule, courts have the inherent power to fashion discovery orders. Thus, it has been said: "Courts are not powerless to formulate rules of procedure where justice demands it." (*Adamson* v. *Superior Court* (1980) 113 Cal.App.3d 505, 509 [169 Cal.Rptr. 866].) "It is beyond dispute that 'Courts have inherent power . . . to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council.' [Citation.]" (*Citizens Utilities Co.* v. *Superior Court* (1963) 59 Cal.2d 805, 812-813 [31 Cal.Rptr. 316, 382 P.2d 356], fn. omitted; see also *Hays* v. *Superior Court* (1940) 16 Cal.2d 260, 264-265 [105 P.2d 975].)

Prosecutorial discovery, however, often raises complex and serious constitutional questions. It is for this reason that our Supreme Court concluded that the initial consideration of laws governing such are more appropriately to be initially decided by the Legislature. (*People* v. *Collie* (1981) 30 Cal.3d 43, 51-56 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776].)

■ Prosecutorial discovery is a pure creature of statute, in the absence of which, there can be no discovery. (30 Cal.3d at pp. 55-56; *People* v. *Fatone* (1985) 165 Cal.App.3d 1164, 1181 [211 Cal.Rptr. 288].) "In criminal proceedings, under the reciprocal discovery provisions of section 1054 et seq., all court-ordered discovery is governed exclusively by—and *is barred except as provided by*—the discovery chapter . . . ." (*In re Littlefield* (1993) 5 Cal.4th 122, 129 [19 Cal.Rptr.2d 248, 851 P.2d 42], italics added; see also *Sandeffer* v. *Superior Court* (1993) 18 Cal.App.4th 672, 677 [22 Cal.Rptr.2d 261].)

In footnote 14 of *Izazaga*, Chief Justice Lucas explained the operation of the statutory scheme as follows: "[O]n demand the defense must disclose *only the witnesses* (and their statements) it intends to call in refutation of the prosecution's case, rather than all the evidence developed by the defense in refutation. (See §§ 1054.1, 1054.3.) Thus, the defense is not required to disclose any statements it obtains from prosecution witnesses that it may use to refute the prosecution's case during cross-examination. Were this otherwise, we would be presented with a significant issue of reciprocity." (*Izazaga*, 54 Cal.3d at p. 377, fn. 14.)

The prosecution brushes aside the above language as dicta and an incorrect statement of the law. It takes the position that there is no limitation on discovery where the defense indicates an intention to cross-examine a prosecution witness with prior inconsistent statements because, in doing so, the defense will later call one of its own witnesses to impeach the prosecution witness. Citing *Izazaga*, the prosecution argues that the discovery of impeachment material is required because it is "reasonably likely" that the defense investigator will be called to the stand.

As we shall explain, a compelling argument can be made, and we believe, that footnote 14 of *Izazaga* is a holding. ▇▇▇ Mr. Witkin has summarized the distinction between the holding of a case and dictum as follows: "The *ratio decidendi* is the principle or rule which constitutes the ground of the decision, and it is this principle or rule which has the effect of a precedent. It is therefore necessary to read the language of an opinion in the light of its facts and the issues raised, to determine (a) which statements of law were necessary to the decision, and therefore binding precedent, and (b) which were arguments and general observations, unnecessary to the decision, i.e., dicta, with no force as precedents. [Citations.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, p. 753; see also *Trope* v. *Katz* (1995) 11 Cal.4th 274, 287 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

▇▇▇ Footnote 14 of *Izazaga* must be read in connection with the text to which it is appended. In *Izazaga* there was a comprehensive and express challenge to the constitutionality of the discovery statute, i.e., that it violated the due process clause of the Fourteenth Amendment to the United States Constitution by failing to provide "reciprocity." (See *Izazaga, supra*, 54 Cal.3d at pp. 363, 372-377.) The accompanying text of *Izazaga* explains why the discovery statute's treatment of reciprocity passes constitutional muster. (*Id.*, at p. 377.) The opinion then explicates that a "significant issue of reciprocity" would be presented if the People were entitled to discover statements of prosecution witnesses *before* the defense intends to call a witness to the statement. Footnote 14 cannot reasonably be construed as being unnecessary to the *Izazaga* opinion.

Thus, the ruling of respondent court violates the well-known rule articulated in *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]. ▇▇▇ The Court of Appeal, the appellate department of the superior court, and the trial courts are required to follow the "statements of law" of the California Supreme Court. These "statements of law" ". . . must be applied wherever the facts of a case are not fairly distinguishable from the facts of the case in which . . . [the California Supreme Court has] declared the applicable principle of law."

(*People* v. *Triggs* (1973) 8 Cal.3d 884, 891 [106 Cal.Rptr. 408, 506 P.2d 232].)

"Even if properly characterized as dictum, statements of the Supreme Court should be considered persuasive. [Citation.]" (*United Steelworkers of America* v. *Board of Education* (1984) 162 Cal.App.3d 823, 835 [209 Cal.Rptr. 16].) Twenty years ago, Presiding Justice Otto M. Kaus gave some sage advice to trial judges and intermediate appellate court justices: Generally speaking, follow dicta from the California Supreme Court. (*People* v. *Trice* (1977) 75 Cal.App.3d 984, 987 [143 Cal.Rptr. 730].) That was good advice then and good advice now. Unfortunately, this advice was lost upon respondent court.

When the Supreme Court has conducted a thorough analysis of the issues and such analysis reflects compelling logic, its dictum should be followed. (*United Steelworkers of America* v. *Board of Education, supra,* 162 Cal.App.3d at p. 835.) ▮▮ The language of footnote 14 in *Izazaga* was carefully drafted. It was not ". . . inadvertent, ill-considered or a matter lightly to be disregarded." (*Jaramillo* v. *State of California* (1978) 81 Cal.App.3d 968, 971 [146 Cal.Rptr. 823]; see also *In re Brittany M.* (1993) 19 Cal.App.4th 1396, 1403 [24 Cal.Rptr.2d 57].)

Respondent court's rationale, even if it has a basis in logic, finds no support in constitutional, statutory, or decisional law. A trial court should not attempt to embroider the discovery statute to provide greater discovery rights for the prosecution. Lest there be any confusion, we adopt the language of footnote 14 of *Izazaga* as our holding.

In *Izazaga*, the Supreme Court conducted an exhaustive examination of the state and federal constitutional rights affected by prosecutorial discovery. In doing so, the court was careful to not give an expansive meaning to the doctrine of reciprocity lest it intrude upon the due process rights of the accused. (54 Cal.3d, at p. 377.)

The statutory language of Penal Code section 1054.3, subdivision (a) is straightforward: The defense is required to disclose the "names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial." The language of this section contains nothing that would authorize the discovery of statements from witnesses whom the accused does not intend to call at trial. *Izazaga* reiterates this point five times. (*Izazaga, supra,* 54 Cal.3d at pp. 367, 368, 374, 375, 380; see also *In re Littlefield, supra,* 5 Cal.4th at p. 130 ["Persons whom the defense intends to call as witnesses at trial, in the context of section 1054.3, subdivision (a),

include ' "all witnesses it reasonably anticipates it is likely to call. . . ." ' [Citation.]"].)

The prosecution argues that, once its witness denies having made the pretrial statement to the defense investigator (as apparently was the case here), the defense will call its investigator to impeach the prosecution witness. This assertion evidences a misunderstanding of a fundamental premise of criminal law: "[T]he determination whether to call a witness is peculiarly within the discretion of counsel." (*Sandeffer* v. *Superior Court, supra,* 18 Cal.App.4th 672, 678.) There is no rule of law that would require the defense to disclose evidence gathered by an investigator who may tentatively be called by the defense for impeachment purposes. The instant case is illustrative. Defense counsel did not call the investigator to whom Ms. Hurley made pretrial statements.

Respondent court, by letter, defends its orders by calling our attention to *People* v. *Carter* (1957) 48 Cal.2d 737 [312 P.2d 665], and *Kadelbach* v. *Amaral* (1973) 31 Cal.App.3d 814 [107 Cal.Rptr. 720]. These cases are slim underpinnings for the bold principle asserted by respondent court. Neither opinion considered the constitutional rights that are compromised by prosecutorial discovery and neither supports the order.

In *People* v. *Carter, supra,* 48 Cal.2d 737, the court commanded the *prosecution* to turn over to the *defense* evidence that it used to impeach a defense witness. (*Id.,* at pp. 751-752.) ▮ Penal Code section 1054.3, however, does not create a symmetrical scheme of discovery. (*Izazaga, supra,* 54 Cal.3d at p. 377.) "The prosecutor's duties of disclosure under the due process clause are *wholly independent* of any statutory scheme of reciprocal discovery. The due process requirements are self-executing and need no statutory support to be effective. Such obligations exist whether or not the state has adopted a reciprocal discovery statute. Furthermore, if a statutory discovery scheme exists, these due process requirements operate outside such a scheme." (*Id.,* at p. 378; see also *Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215, 218] [the prosecution has an obligation to turn over exculpatory evidence].)

*Kadelbach* v. *Amaral, supra,* 31 Cal.App.3d 814, was a civil case in which the Court of Appeal expressed logical reasons why opposing counsel should be given discovery of pretrial written or recorded witnesses statements. However, those reasons are inapposite to criminal discovery. As indicated, the criminal discovery statutes are the sole basis for prosecution discovery. (E.g., *Sandeffer* v. *Superior Court, supra,* 18 Cal.App.4th at p. 677.)

▮ The fact that the trial court modified its order to limit disclosure to "statements used in cross-examination" does not cure the defect. The defense

was not required to disclose any written statement recorded by its investigator prior to cross-examination of a prosecution witness. Evidence Code section 769 provides: "In examining a witness concerning a statement or other conduct by him that is inconsistent with any part of his testimony at hearing, it is not necessary to disclose to him any information concerning the statement or other conduct."

The alternative writ, having accomplished its purpose, is dissolved and the petition is denied as moot.

Stone (S. J.), P. J., and Gilbert, J., concurred.