89 Cal.Rptr.2d 440 (1999)
75 Cal.App.4th 789
William Bradford SAUNDERS, Petitioner,
v.
The SUPERIOR COURT of San Diego County, Respondent;
The People, Real Party in Interest.
No. D032472.
Court of Appeal, Fourth District, Division One.
September 23, 1999.
Review Denied January 13, 2000.[*]
*442 Steven J. Carroll, Public Defender, Gary R. Nichols and Matthew C. Braner, Deputy Public Defenders, for Petitioner.
Carmela F. Simoncini for Appellate Defenders, Inc., as amicus curiae on behalf of Petitioner.
John J. Sansone, County Counsel, Diane Bardsley, Assistant County Counsel, R. Mark Beesley, Deputy County Counsel, for Respondent.
Paul J. Pfingst, District Attorney, Thomas F. McArdle and Anthony Lovett, Deputy District Attorneys, for Real Party in Interest.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Laura Whitcomb Halgren and Angela K. Rosenau, Deputy Attorneys General, as amici curiae on behalf of Real Party in Interest.
NARES, J.
This case involves interpretation of the criminal discovery chapter (Pen. Code,[1] § 1054 et seq.), implemented in 1990 as part of Proposition 115. William Bradford Saunders petitions for a writ of mandate after the court imposed $500 in sanctions against him for the failure to comply with its order to provide the prosecution with the reports of designated expert witnesses by a certain date during trial. We conclude sanctions may be imposed under Code of Civil Procedure section 177.5 for the violation of a valid criminal discovery order, the order here was valid and the sanctions imposed were within the court's discretion. The court, however, erred by directing Saunders to pay the sanctions to a charity of his choice and by failing to issue a written order; insofar as those issues are concerned, we grant the petition and remand. In all other respects, we deny the petition.

FACTS
Saunders is an experienced criminal trial lawyer, employed as a deputy public defender by the County of San Diego. On April 22, 1998, he was assigned to defend Mark Edward Gesse, who was charged with murdering a man during a 1991 altercation aboard a boat.[2] Gesse was brought from Florida to California and arraigned *443 on June 16, 1998.[3] He wanted an early trial and it was initially scheduled for September 14.
Saunders located and interviewed potential expert witnesses in late July and early August, and obtained expert witness expense authorizations from his office in late August through late September. As Saunders retained experts, he gave the prosecution their names, resumes and telephone numbers, along with permission to contact them.
Trial was continued to September 24 due to pretrial motions. At the conclusion of a hearing on September 21, the prosecuting attorney, Mark Pettine, stated, "We ... would like defense discovery. Mr. Saunders has been kind enough to give me orally ... a list of witnesses he intends to call. However, four of the witnesses he intends to call are expert witnesses. We have yet to receive any reports from them. Our trial date is in four [sic] days. Of course we would need to have those reports in sufficient time to prepare."
Saunders responded, "They're being prepared. As a matter of fact, the work is still continuing and we're going into a dead run to try to get this case ready. I have no reports to turn over. As soon as I know I intend to call the person as a witness, I'll make discovery available immediately." The court stated, "[A]s a practical matter I can do nothing more than order they [written reports of the experts] be turned over as soon as available. And if that requires the trial be trailed for some time, I guess that's what has to be done."
On September 24 Gesse moved for a trial continuance, based in part upon the fact that defense expert witnesses had not completed their work. Saunders explained, "We have not been able to give the prosecutor discovery in reports because there is none." Pettine opposed the motion, arguing a continuance would necessitate resubpoenaing 40 witnesses. The court denied the motion, but put the matter over until September 28 because no courtroom was available for a lengthy trial.
The trial was assigned to Judge William D. Mudd. On September 28, Pettine complained that Saunders had just given him a list of 24 witnesses he intended to call, including numerous experts, but no reports were attached. Saunders had retained experts in the fields of oceanography, acoustical engineering, forensic science, psychology, audiology and ophthalmology. He believed the reports of the acoustical engineer and forensic scientist might be waiting at his office, but other experts had not provided their reports. Saunders explained, "[I]n terms of the experts that I have, the case is still underway as far as being developed. I mean we haven't foreclosed the retention of anybody even though we're getting ready to pick a jury. [11] ... [H] Until I ... actually see the report myself, I can't make a decision as to whether I'm going to call a witness."
The court responded, "[T]hat is litany that this department has heard. I no longer accept that. And I certainly don't accept it from a defense attorney of your caliber. I don't accept it because you're heading into trial. You've made motions based on what witnesses are going to say, and now you're telling me you haven't decided whether you're going to call them or not.[[4]] Now, maybe it doesn't sound incongruous to you, but it sure does to me. So you better continue your explanation."
Saunders denied he was trying to "sandbag[ ] anybody[.]" Between April and June 15, he was assertedly handling 39 other felony cases. When assigned Gesse's case, Saunders was required to review more than 3,000 pages of preliminary hearing transcripts, grand jury transcripts and other documents. Saunders *444 devoted July primarily to writing motions, including an approximately 100-page motion to set aside the indictment for lack of probable cause (§ 995). Concurrently, Saunders was investigating the case. He "had nothing but dead ends" until he located a woman in Ohio who apparently knew the victim, "his drug habit, his alcoholism, his violence, et cetera." The investigation "took off only in August.
The court told Saunders: "[I]f you expect to use any of these experts, you're going to have to have disclosure. Now, from what you have just told me, the representations you have just made, rough drafts at least of these reports are to be in your possession shortly." Saunders responded, "That's correct." The court further cautioned Saunders: "I don't want any surprises ... that are going to cause a delay of this trial. If I get those kinds of surprises, you personally are going to be responsible for them. I expect complete discovery as is mandated by statute. And if you expect to call these experts, I'm going to expect that you will have their reports in some form, whether it be rough draft or final form, in the hands of the district attorney not later than [October 5.] ... [¶] ... [¶] [I]f it's not reduced to writing and it is not made available ... by that date, [you are] not going to use it."
By September 30, Saunders had provided Pettine with reports by the acoustical engineer and the ophthalmologist. On October 5, Saunders provided Pettine with the oceanographer's report and a report dated September 29 by the forensic scientist. Pettine moved to exclude the latter report because Saunders failed to provide him with a copy upon its receipt, in violation of the court's first discovery order. The court denied the motion, stating it would "take up the issue of sanctions as to [Saunders] personally ... at the end of this trial."
On October 8, the court excluded the testimony of the psychologist and the audiologist because Saunders submitted their reports after the October 5 deadline. On October 14, the court excluded a supplemental report by the oceanographer because the information should have been included in the original report and the court would not "tolerate discovery that shows up the day before a witness testifies."
On November 5, after the conclusion of trial,[5] the court held a hearing regarding the propriety of sanctions against Saunders. The court declined to find Saunders in contempt, but it imposed monetary sanctions of $500 against him for violating its order to provide the prosecution with the reports of designated expert witnesses by October 5.

DISCUSSION[6]

I
Generally, there must be statutory support for the imposition of monetary sanctions against counsel. (Bauguess v. Paine (1978) 22 Cal.3d 626, 637, 150 Cal. Rptr. 461, 586 P.2d 942.) While the trial court specified no basis for the imposition of sanctions here, Code of Civil Procedure section 177.5, which applies to criminal proceedings (People v. Tabb (1991) 228 Cal.App.3d 1300, 1303, 279 Cal.Rptr. 480), provides in part: "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ..., notwithstanding any other provision of law ..., for any violation of a lawful court order by a person, done without good cause or substantial justification." (Code Civ. Proa, § 177.5, italics added.) Saunders contends the court's order was not lawful under Proposition 115, and thus *445 Code of Civil Procedure section 177.5 is inapplicable.

II
On June 5, 1990, the electorate approved Proposition 115, the "Crime Victims Justice Reform Act," which requires two-way discovery between the prosecution and defense. (See Cal. Const., art. I, § 30, subd. (c) [declares discovery to be "reciprocal" in criminal cases].) All court ordered discovery is now governed exclusively by, and is barred except as provided by, the discovery chapter added as part of Proposition 115 (§ 1054 et seq.). (In re Littlefield (1993) 5 Cal.4th 122, 129, 19 Cal.Rptr.2d 248, 851 P.2d 42.)
The scope of the defense's duty of disclosure is set forth in section 1054.3:
"The defendant and his or her attorney shall disclose to the prosecuting attorney:
"(a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial.

"(b) Any real evidence which the defendant intends to offer in evidence at the trial."[7] (Italics added.)
"[T]he prosecution's right to discover defendant's witnesses under section 1054.3 is triggered by the intent of the defense to call that witness. Thus, the disclosure by the defense of its witnesses under section 1054.3 signals to the prosecution that the defense `intends' to call those witnesses at trial." (Izazaga v. Superior Court (1991) 54 Cal.3d 356, 375, 285 Cal.Rptr. 231, 815 P.2d 304, original italics.) A party intends to call a witness at trial if he or she "`reasonably anticipates'" calling the witness.[8] (Izazaga v. Superior Court, supra, at p. 376, fn. 11, 285 Cal. Rptr. 231, 815 P.2d 304.)
Section 1054.7 provides that reciprocal disclosures "shall be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred. If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately, unless good cause is shown why a disclosure should be denied, restricted, or deferred." This provision imposes a continuing duty of disclosure. (Izazaga v. Superior Court, supra, 54 Cal.3d at p. 364, 285 Cal.Rptr. 231, 815 P.2d 304.)
Given Saunders's formal designation of the experts as trial witnesses, and his reference to the opinions of two of them during in limine motions, the court cannot be faulted for finding he intended to call them at trial, notwithstanding his protest he had not yet decided. While a particular expert may not ultimately testify, the designation as a trial witness shows the party "`reasonably anticipates'" calling him or her.[9] (Izazaga v. Superior *446 Court, supra, 54 Cal.3d at p. 376, fn. 11, 285 Cal.Rptr. 231, 815 P.2d 304.)
When the court imposed its order, however, Saunders had already complied with the obligation to divulge the names and addresses of defense experts. (§ 1054.3, subd. (a).) The question is whether the court was authorized to compel the production of their reports by October 5, shortly before completion of the prosecution case. Saunders argues the court's order improperly required the defense to obtain written reports from its experts. That is not the Saunders voluntarily ordered expert reports and repeatedly advised the court they were forthcoming. Moreover, Saunders was not compelled to give the prosecution any reports that may have been detrimental or unhelpful to the defense. Rather, he was only required to submit the reports of experts he still planned to call after reviewing their information.
Saunders also contends the criminal discovery chapter precludes the court from compelling the production of expert witness reports that are not actually in counsel's possession. He relies upon section 1054.7, which requires the disclosure of information that "becomes known to, or comes into the possession of, a party within 30 days of trial...." Our high court, however, has interpreted the discovery statutes to obligate both parties to disclose discoverable evidence that is "reasonably accessible." (In re Littlefield, supra, 5 Cal.4th at p. 131, 19 Cal.Rptr.2d 248, 851 P.2d 42.) In Littlefield, the court observed that "[a]llowing the defense to refrain deliberately from learning the address or whereabouts of a prospective witness, and thus to furnish to the prosecution nothing more than the name of such a witness, would defeat the objectives of the voters who enacted section 1054.3: to permit the prosecution a reasonable opportunity to investigate prospective defense witnesses before trial so as to determine the nature of their anticipated testimony, to discover any matter that might reveal a bias or otherwise impeach the witness's testimony, and to avoid the need for midtrial continuances for these purposes." (Ibid.)
Saunders argues that because he disclosed the names and addresses of defense witnesses, the prosecution could have checked their credentials and uncovered any "negative information." He concedes, though, that the "experts perhaps had little to tell the prosecutor prior to completing their work[.]" Here, as in Littlefield, attributing no responsibility to counsel to obtain and disclose discoverable evidence in a timely manner would result in the very mischief the discovery chapter was designed to prevent. Saunders's untimely production of expert reports, in fact, prompted numerous discovery hearings during trial and attendant delays, and increased the chance of undue surprise. (See Woods v. Superior Court, supra, 25 Cal.App.4th at p. 184, 30 Cal.Rptr.2d 182 [reciprocal discovery promotes People's interest in preventing last minute defense].)
In Sandeffer v. Superior Court, supra, 18 Cal.App.4th at p. 678, 22 Cal.Rptr.2d 261, we observed "[c]ourts must have the flexibility to order production [of expert witness reports] by a specific date in complex litigation ... where discovery at the tail end of the case would defeat the act's purposes." [10] "`[T]he need for pretrial discovery is greater with respect to expert *447 witnesses than it is in the case of ordinary fact witnesses. If a party is going to present the testimony of experts during trial, the other parties must prepare to cope with the testimony to be given by people with specialized knowledge in a scientific or technical field.' [Citation.]" (Zellerino v. Brown (1991) 235 Cal.App.3d 1097, 1117, 1 Cal.Rptr.2d 222.)
Given the objectives of the criminal discovery chapter, we conclude that once a party designates expert witnesses, as here, the court may order the production of reports that are in counsel's possession or "reasonably accessible" to counsel. (In re Littlefield, supra, 5 Cal.4th at p. 136, 19 Cal.Rptr.2d 248, 851 P.2d 42.) Presumably, attorneys wield sufficient control over retained experts to ensure their compliance with reasonable discovery orders. Indeed, Saunders produced no evidence showing the reports of defense experts were not "reasonably accessible" by October 5. (Ibid.) "Under section 1054.7, ... the party seeking relief from the disclosure requirements has the burden of demonstrating that the information subject to discovery is unavailable." (Ibid.) In sum, the court's discovery order was lawful and enforceable.

III
"`We review the imposition of monetary sanctions [under Code of Civil Procedure section 177.5] for a prejudicial abuse of discretion. [Citation.] Where a trial court has discretion to decide an issue, it will be reversed on appeal only where it clearly appears that a prejudicial abuse of discretion has occurred. [Citation.]'" (People v. Tabb, supra, 228 Cal. App.3d at p. 1311, 279 Cal.Rptr. 480.)
The apparent purpose of Code of Civil Procedure section 177.5 is to "compensate public agencies [such as the courts] for the cost of unnecessary hearings." (Moyal v. Lanphear (1989) 208 Cal. App.3d 491, 499, 256 Cal.Rptr. 296.) It is undisputed that Saunders violated the court's discovery order by failing to submit the reports of the psychologist and the audiologist by October 5, and the failure resulted in an unnecessary hearing and delay. The question remains whether Saunders showed "good cause or substantial justification" for violating the court's order. (Code Civ. Proc, § 177.5.)
On October 8, when the court excluded the late expert reports, Saunders said only, "The pressures of the caseload in the public defender system may interfere with our getting things done one case at a time. We don't have that luxury.... [H] So things do develop on a late notice for a whole variety of reasons. Sometimes the experts are late; sometimes the administration doesn't approve things on time, and sometimes I'm ... focusing on other parts of the case." Saunders said nothing about why he failed to submit the expert reports at issue by October 5.
During the sanctions motion, Saunders told the court he had asked defense experts to get their materials to him in time to meet the October 5 deadline. Saunders explained the audiologist sent her report by facsimile and mail to the public defender's San Diego office on October 2, but his receipt was delayed until after the deadline because his office was in Vista. Saunders said he did not receive the psychologist's report in the mail until one day after the deadline.
"`Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.'" (Denham v. Superior Court (1970) 2 Cal.3d 557, 566, 86 Cal.Rptr. 65, 468 P.2d 193.) Under the circumstances here, we cannot say the court's order exceeds the bounds of reason.
We also reject the notion the court could only impose the sanctions set forth in section 1054.5, subdivision (b), including "contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence [or] *448 continuance of the matter...." [11] The provision also allows the court to make "any other lawful order" in conjunction with a violation of section 1054.3. (§ 1054.5, subd. (b).) Further, Code of Civil Procedure section 177.5 explicitly applies "notwithstanding any other provision of law[.]" [12]

IV
The court erred by ordering Saunders to pay the $500 to a charity of his choice. Under Code of Civil Procedure section 177.5, the fine must be "payable to the county in which the judicial officer is located...." As noted, the purpose of the provision is to compensate courts for unnecessary hearings.
Code of Civil Procedure section 177.5 also provides: "An order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order." The court here issued no written order. Moreover, the court's minute order does not satisfy Code of Civil Procedure section 177.5 because it states no reason for the imposition of sanctions against Saunders. (See Laborers' Internal. Union of North America v. El Dorado Landscape Co. (1989) 208 Cal. App.3d 993,1009, 256 Cal.Rptr. 632.)
The requirement of a written sanctions order "is to fulfill the `rudiments' of due process required for governmental imposition of a penalty upon an attorney or partyboth for due process' own, constitutional sake and to ensure that the power conferred by the statute will not be abused. [Citations.] Moreover, in some cases the court's recitation will be an invaluable aid to a reviewing court determining whether the trial court abused its discretion in awarding sanctions. [Citations.]" (Lavine v. Hospital of the Good Samaritan (1985) 169 Cal.App.3d 1019, 1029, 215 Cal.Rptr. 708 [sanctions under Code Civ. Proa, § 128.5].)
Even where the court makes its reasoning for assessing sanctions clear at the hearing, "... all authority militates against use of the harmless error doctrine in review of an order which fails to set forth `in detail the conduct or circumstances justifying sanctions.' [Citations.]" (West Coast Development v. Reed (1992) 2 Cal.App.4th 693, 705, 3 Cal.Rptr.2d 790.) "A trial judge's on-the-record oral recitation of reasons for imposing sanctions is insufficient." (Jansen Associates, Inc. v. Codercard, Inc. (1990) 218 Cal.App.3d 1166, 1171, 267 Cal.Rptr. 516.) We thus adhere to the well-established rule of remanding the case to the trial court for the fashioning of an order in compliance with Code of Civil Procedure section 177.5. (West Coast Development v. Reed, supra, 2 Cal.App.4th at p. 706, 3 Cal.Rptr.2d 790.)

DISPOSITION
Because the trial court improperly ordered Saunders to pay sanctions to a charity of his choice, as opposed to the County of San Diego, and failed to state in its order the grounds for sanctions, the petition is granted in part and the matter is remanded for the issuance of a new order in accordance with Code of Civil Procedure section 177.5. In all other respects, the *449 petition is denied. The parties are to bear their own costs on appeal.
McINTYRE, J., concurs.
HUFFMAN, Acting P.J., concurring:
I fully agree with the majority that the order imposing sanctions is fatally flawed in two respects. The trial court did not provide a written statement of the reasons for the imposition of sanction; thus, the order is facially invalid. Further, as the majority correctly explains, the trial court lacked the power to order the sanctions payable to a charity. I would grant the writ on these bases and return the matter to the trial court without further ado.
I generally agree with the majority's conclusion that the court had the power to impose sanctions for violation of a discovery order. I also agree the trial court has the power to set reasonable deadlines for both counsel to produce written reports from identified expert witnesses. The trial court cannot be held hostage to sloth on the part of any counsel in a criminal trial and must be entitled to use the coercive powers made available to it to promote prompt resolution of criminal cases.
Although I have expressed general agreement with the majority, I have come to the conclusion this is not the case in which to discuss at length the court's options. I have no idea why the trial court imposed sanctions on Saunders. I know the trial judge was mightily upset, angry, and in ill temper. However, in the absence of a written order which points out why there was no good cause for the delays, we simply cannot assess whether there is a factual basis for the sanction order. Therefore, I would leave the discussion of the possible merits of the sanction order to another day. Based upon such reasons, I concur only in the judgment.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] Statutory references are to the Penal Code except where specified otherwise.
[2] Gesse was reportedly originally indicted in 1997, but the case was dismissed for insufficient evidence. Saunders did not represent Gesse in the first case.
[3] Subsequent dates are in 1998.
[4] During in limine motions, Saunders referred to the opinions of the defense's acoustical engineer and oceanographer.
[5] The jury reportedly acquitted Gesse of first degree murder and could not reach a verdict as to second degree murder.
[6] The Attorney General and Appellate Defenders, Inc. (ADI) complied with our request for amicus curiae briefs and we have taken their arguments into consideration.
[7] Section 1054.1 imposes reciprocal, but not symmetrical, discovery obligations on the prosecution. (See Hubbard v. Superior Court (1997) 66 Cal.App.4th 1163, 1170, 78 Cal. Rptr.2d 819; Mines v. Superior Court (1993) 20 Cal.App.4th 1818, 1824, 25 Cal.Rptr.2d 712.)
[8] "Section 1054.3 ... is perhaps one of `the most significant and controversial' parts of the new reciprocal discovery scheme. [Citation.] Requiring the defense to disclose witnesses other than the defendant that it intends to call at trial and produce statements, reports and real evidence, the statute opens up `avenues of discovery' previously closed to the prosecution in California. [Citations.]" (Woods v. Superior Court (1994) 25 Cal. App.4th 178, 182, 30 Cal.Rptr.2d 182.)
[9] Saunders's reliance upon our opinion in Sandeffer v. Superior Court (1993) 18 Cal. App.4th 672, 22 Cal.Rptr.2d 261 is misplaced. There, we held the court exceeded its jurisdiction in compelling the production of information and reports of an expert before she was identified by defense counsel as a trial witness. We observed "the determination whether to call a witness is peculiarly within the discretion of counsel." (Id. at p. 678, 22 Cal.Rptr.2d 261.) Here, in contrast, disclosure of expert reports was not compelled until after the defense designated them as trial witnesses.
[10] In Sandeffer, we held section 1054.7 does not preclude the court from compelling the production of expert witness reports more than 30 days before trial. (Sandeffer v. Superior Court, supra, 18 Cal.App.4th at p. 678, 22 Cal.Rptr.2d 261.)
[11] Respondent court asserts that section 1054.5, subdivision (b) provides an alternative statutory ground for its imposition of monetary sanctions against Saunders. We disagree. By its terms, the provision allows for monetary sanctions only in conjunction with contempt proceedings. The court expressly found Saunders was not in contempt.
[12] Saunders argues the courts order improperly precluded defense experts from conducting further investigation during trial. We need not reach the issue because we have concluded the imposition of sanctions was proper even absent Saunders's attempt to introduce a supplemental expert report regarding investigation conducted on and after October 5. We are also not required to consider whether Saunders's marking of a trial exhibit outside the presence of the court and the prosecution was a sanctionable offense.